# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 2___

### OCTOBER TERM, A.D. 2020

**January 6, 2021**

HUNTER LEE HICKS,

Appellant
(Defendant),

v.                                                                S-20-0058

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Michael N. Deegan, Judge

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel. Argument by Ms. Wilson.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    A jury found Hunter Lee Hicks guilty of third-degree sexual abuse of a minor, TM. He claims the district court erred by admitting into evidence TM's prior consistent statements and allowing the jury to view, during deliberations, a muted clip of a video of him and a police officer walking through the bedroom where the abuse occurred.  We affirm.

## ISSUES

[¶2]    We restate Mr. Hicks' issues on appeal as:

I.      Did the district court plainly err when it admitted into evidence TM's out-of-court statements?

II.     Did the district court abuse its discretion when it allowed the jury to review a clip of a muted video during deliberations?

III.    Was Mr. Hicks denied a fair trial due to cumulative error?

## FACTS

[¶3]    On May 12, 2018, fourteen-year-old TM spent the night with her friend, WG.  WG lived with her mother, Stephanie Hicks, and her thirty-three-year-old stepfather, Mr. Hicks, in Gillette, Wyoming.  The girls slept in the same bed in WG's downstairs bedroom; a light was on in an adjacent bathroom.  At approximately 4:00 or 5:00 a.m. on May 13, 2018, TM woke from a nightmare and saw a figure reflected in the television.  At first, she thought it was WG.  She realized it was Mr. Hicks when he began rubbing her feet.  As TM pretended to sleep, Mr. Hicks moved his hands slowly up her leg until he squeezed her bare buttocks underneath her shorts and underwear.  Mr. Hicks stopped touching TM's buttocks when WG stirred.  He then moved to TM's head and began rubbing her temples. She pretended to wake up and told him to stop.  He asked her what she wanted for breakfast, and she responded, "nothing, because [she] wasn't hungry."  Mr. Hicks started tickling TM's feet and asked if she liked it.  She said, "No."

[¶4]    WG woke up and saw Mr. Hicks leaving the room.  She got out of bed to turn the bathroom light off.  TM started crying and told WG to leave the light on because Mr. Hicks had just touched her and she was scared.  TM contacted her mother, Lori Mallak, to tell her what had happened.  Ms. Mallak called TM's father, Troy Mallak, and relayed what TM had told her; she then drove to the Hicks' house.  Mr. Mallak left work and arrived at the Hicks' house a short time later.  While en route, he called 911 to report TM had been molested.

1

[¶5]    Gillette Police Department Officers Troy Cyr and Alan Stuber responded to the call and spoke with the people gathered at the Hicks' house.  The interviews were recorded by the officers' body cameras.  Mr. Hicks denied touching TM inappropriately.  He told Officer Stuber he had gone to WG's room to ask the girls what they wanted for breakfast and noticed TM was about to fall off the bed, so he pushed her back on.  Officer Stuber and Mr. Hicks went downstairs to WG's room, and Mr. Hicks showed him around while explaining what had happened earlier that morning.

[¶6]    Ms. Mallak and WG told the police what TM said about the abuse.  The Mallaks transported TM to the police department, where she was interviewed by Sergeant Eric Dearcorn.  That interview was also recorded.

[¶7]    The State charged Mr. Hicks with third-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-316(a)(iv) (LexisNexis 2019) for taking immodest, immoral or indecent liberties with TM.  The case proceeded to a jury trial.  The jury found Mr. Hicks guilty, and the district court sentenced him to serve 30 to 60 months in prison.  This appeal followed.

[¶8]    We will provide more details about the facts and course of proceedings as needed in our discussion of the issues.

## DISCUSSION

### 1. Hearsay/Prior Consistent Statements

[¶9]    TM testified as the State's first witness at trial and described her encounter with Mr. Hicks.  She also testified she told WG and Ms. Mallak about the abuse shortly after it happened and was interviewed by Sergeant Dearcorn.  In open court during cross-examination of TM, Mr. Hicks used part of the recorded video of her interview with Sergeant Dearcorn to refresh her recollection.[1]  TM's entire recorded interview was later admitted into evidence without objection during Sergeant Dearcorn's direct examination. Ms. Mallak testified concerning TM's statements about Mr. Hicks touching TM's "butt," feet and head.  Mr. Hicks objected to Ms. Mallak's recount of TM's statements, but the district court allowed the testimony as a prior consistent statement under Wyoming Rule of Evidence (W.R.E.) 801(d)(1)(B).  WG testified about what she observed that morning and what TM told her.  The State showed WG part of a video of her interview with police when she could not remember everything TM said.  Mr. Hicks did not object to WG's testimony or the video of her interview.  On appeal, Mr. Hicks challenges the admission of

---

[1] The technique of refreshing the witnesses' recollections with videos played in the presence of the jury was used by both parties throughout the trial.  The district court noted the approach was unusual because the jury is typically excused while a witness is shown a video to refresh his or her recollection, but it allowed the practice to continue in this case because no one objected.

2

TM's recorded interview under W.R.E. 801(d)(1)(B). He also asserts the repetition of TM's claim of abuse by the State's witnesses impermissibly bolstered her testimony.

[¶10] Mr. Hicks did not object at trial to the admission of TM's recorded interview, so we review his claim for plain error. *Griggs v. State,* 2016 WY 16, ¶ 81, 367 P.3d 1108, 1132 (Wyo. 2016). Plain error is established when: (1) the record clearly reflects the claimed error; (2) the party asserting the error demonstrates a clear and obvious violation of a clear and unequivocal rule of law; and (3) the party proves the violation adversely affected his substantial rights resulting in material prejudice. *Brown v. State,* 2019 WY 102, ¶ 13, 450 P.3d 208, 211 (Wyo. 2019); *Hathaway v. State,* 2017 WY 92, ¶ 29, 399 P.3d 625, 634 (Wyo. 2017); *Griggs,* ¶ 81, 367 P.3d at 1132-33.

[¶11] The admission of TM's recorded interview is clearly reflected in the record, satisfying the first element of the plain error test. Although he does not conduct a plain error analysis in his brief, Mr. Hicks asserts the video was improperly admitted as a prior consistent statement because it was recorded "after the motive to fabricate and/or the improper influence arose."

[¶12] W.R.E. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under W.R.E. 802, hearsay statements generally are not admissible. However, Rule 801(d)(1)(B) provides that, under certain circumstances, prior consistent statements are not hearsay. The rule states:

> (d) *Statements which are not hearsay.* – A statement is not hearsay if:
> (1) Prior Statement by Witness. – The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

*Id.*

[¶13] Four requirements must be satisfied for admission of a prior consistent statement under W.R.E. 801(d)(1)(B): (1) the declarant must testify at trial; (2) the declarant must be subject to cross-examination concerning the prior statement; (3) the prior statement must be consistent with the declarant's trial testimony; and (4) the prior statement must be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *Griggs,* ¶ 98, 367 P.3d at 1136; *Large v. State,* 2008 WY 22, ¶ 37, 177 P.3d 807, 818-19 (Wyo. 2008).

3

[¶14] Mr. Hicks' argument focuses on the fourth element of the Rule 801(d)(1)(B) test. Applying that element, we consider "when the alleged fabrication, improper influence, or motive arose." *Jones v. State,* 2019 WY 45, ¶ 16, 439 P.3d 753, 758 (Wyo. 2019). We agree with Mr. Hicks that TM's motive to fabricate arose before she was interviewed by Sergeant Dearcorn. The defense asserted in opening statement and during cross-examination of TM that, when her family transported her to the police station to be interviewed, they encouraged TM to fabricate or exaggerate Mr. Hicks' actions.

[¶15] Applying Federal Rule of Evidence (F.R.E.) 801(d)(1)(B), the United States Supreme Court has ruled prior consistent statements are not admissible to "rebut an express or implied charge of recent fabrication or improper influence when made *after* the alleged improper motive arose." *Jones,* ¶ 16, 439 P.3d at 758 (citing *Tome v. United States*, 513 U.S. 150, 156, 115 S.Ct. 696, 700, 130 L.Ed.2d 574 (1995) (emphasis in original)). *See also, United States v. Brooks,* 736 F.3d 921, 935 (10th Cir. 2013) (F.R.E. 801(d)(1)(B) "allows prior consistent statements to be used to rebut a charge of recent fabrication as long as the motive to lie does not predate the prior statement. This premotive rule applies even when a prior consistent statement is being used . . . to rehabilitate a witness rather than being offered for its truth.") (citations omitted). This Court has, however, held W.R.E. 801(d)(1)(B) does not require prior consistent statements be made before the improper motive arose to be admissible. *Jones,* ¶ 16, 439 P.3d at 758. *See also, Griggs,* ¶ 105, 367 P.3d at 1137 ("Our approach is intentionally different from the federal courts' application of F.R.E. 801(d)(1)(B) which limits admission of consistent statements to those that were made prior to the alleged fabrication or improper influence or motive. Consequently, Wyoming courts allow a broader use of prior consistent statements than the federal courts do.").

[¶16] In Wyoming,

> [a] prior consistent statement may be used as substantive evidence if the alleged improper influence arose after the statement was made. However, if the prior consistent statement was made after the improper influence arose, then the statement may only be used for rehabilitative purposes. When a prior consistent statement is admissible only for rehabilitative purposes, a limiting instruction must be given, but only if requested.

*Griggs,* ¶ 104, 367 P.3d at 1137 (quoting *Frenzel v. State,* 849 P.2d 741, 751 (Wyo. 1993)) (other citations omitted). Mr. Hicks did not request an instruction limiting the purpose of the recorded interview to rehabilitating TM. When no request is made to limit the purpose of a post-motive consistent statement, the district court does not err by failing to give such an instruction. *Proffit v. State,* 2008 WY 103, ¶ 31, 191 P.3d 974, 983 (Wyo. 2008) (The defendant did not request an instruction limiting the purpose of a post-motive consistent

4

statement; therefore, the "district court was not legally obligated to give one, and no error [could] be premised on its failure to do so."); *Dike v. State,* 990 P.2d 1012, 1024 (Wyo. 1999) (the district court's obligation to give a limiting instruction is predicated on a request by the defendant).

[¶17] Given there is no clear and unequivocal rule in Wyoming which prohibited admission of TM's consistent statements, Mr. Hicks has not demonstrated plain error. *See also, Cook v. State,* 7 P.3d 53, 58 (Wyo. 2000) (W.R.E. 801(d)(1)(B) does not prohibit admission of post-motive consistent statements for the purpose of evaluating the credibility of the declarant who testifies at trial. "Without a rule violation, [the appellant] cannot satisfy the second prong of our test for plain error[.]").

[¶18] Mr. Hicks also claims the State improperly used Ms. Mallak's and WG's testimony and WG's and TM's video-taped interviews to bolster TM's testimony by "piling on" prior consistent statements. Mr. Hicks did not specifically object to the evidence as improperly bolstering TM's testimony; thus, our review is for plain error. *See Buszkiewic v. State,* 2018 WY 100, ¶ 33, 424 P.3d 1272, 1282 (Wyo. 2018) ("The objector should lay his finger on the particular point intended to be raised so that the trial court will have notice and an opportunity to cure the alleged error.") (quoting *Sanderson v. State*, 2007 WY 127, ¶ 13, 165 P.3d 83, 88 (Wyo. 2007) (some quotation marks omitted)). *See also, Farrow v. State,* 2019 WY 30, ¶ 22, 437 P.3d 809, 817 (Wyo. 2019) (When the objection made at trial differs from the argument on appeal, the plain error standard of review applies.).

[¶19] The testimony Mr. Hicks challenges is clearly shown in the record, establishing the first element of the plain error test. We turn next to a search for a clear and obvious violation of a clear and unequivocal rule of law. In *Seward v. State,* 2003 WY 116, ¶ 16, 76 P.3d 805, 811-12 (Wyo. 2003), we cautioned trial courts against allowing the State to use Rule 801(d)(1)(B) to pile on consistent statements, bolstering the victim's testimony. The prosecution abuses the rule by having the victim repeat her accusations to others for the purpose of using those statements at trial as prior consistent statements. *Id. See also, Tombroek v. State,* 2009 WY 126, ¶ 14, 217 P.3d 806, 812 (Wyo. 2009) (recognizing that Rule 801(d)(1)(B) is susceptible to abuse). "Such a trial strategy could render the statements irrelevant and unfairly prejudicial, particularly if the consequence of repeating the same testimony several times unduly emphasizes that testimony over all other testimony in the case." *Seward*, ¶ 16, 76 P.3d at 811-12. *See also, Winters v. State,* 2019 WY 76, ¶ 41, 446 P.3d 191, 206 (Wyo. 2019) (acknowledging the danger of the State presenting "numerous witnesses to repeat the victim's allegations, thereby piling on consistent statements" (citations and quotation marks omitted)).

[¶20] In *Wilde v. State,* 2003 WY 93, ¶ 11, 74 P.3d 699, 706 (Wyo. 2003), the victim testified first at trial. The victim's mother, a law enforcement officer, the victim's pediatrician, an emergency room nurse, and a forensic examiner were also called as witnesses. *Id.,* ¶¶ 3, 11, 74 P.3d at 702, 706. They "repeated all, or at least parts of, the

allegations made by [the victim]." *Id.*, ¶ 11, 74 P.3d at 706. We concluded the district court erred by allowing the State to pile on repetitive and highly prejudicial prior statements to bolster the victim's testimony. *Id.*, ¶ 14, 74 P.3d at 707-08 (citing 4 Mueller & Kirkpatrick, *Federal Evidence* § 405 (2d. ed. 1994, Supp. 2002)). *See also, Jones,* ¶ 22, 439 P.3d at 759-60.

[¶21] However, the sheer number of times the victim's out-of-court statements are allowed at trial is not dispositive as to whether the district court permitted the prosecution to improperly bolster the victim's testimony. In *Tombroek,* ¶¶ 4, 14-15, 217 P.3d at 808, 811-12, we held the district court did not abuse its discretion by allowing a doctor, the victim's mother, the victim's sister, and the investigating police officer to repeat the victim's statement that the appellant had sexually assaulted her. Distinguishing *Seward* and *Wilde,* we emphasized the State's purpose in gathering the evidence is an important consideration in determining whether admission of testimony repeating the victim's statement was proper. *Id.,* ¶¶ 14-15, 217 P.3d at 811-12.

> Our concern in *Seward* was not so much the repetitious nature of the testimony, as it was the State using W.R.E. 801(d)(1)(B) as a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements. . . . We did . . . acknowledge that W.R.E. 801(d)(1)(B) is susceptible to abuse and we take this opportunity to repeat that concern. In fact, we even cautioned district courts regarding admitting this type of testimony without first considering why the interviews occurred and the probative value of admitting such evidence. However, the concerns that we discussed in *Seward* do not exist here. The victim made her statements to the witnesses in a manner that would be expected from a victim in the early stages of a typical sexual assault investigation, rather than in a manner resembling trial preparation tactics, as was our concern in *Seward.* Accordingly, the prior consistent statements were properly admitted. . . .
>
> A reading of th[e] entire opinion [in *Wilde v. State,* ¶¶ 11–14, 74 P.3d at 706–08] reveals . . . that the focus of our concern was, as in *Seward,* the vouching nature of the questioned testimony, and its resultant prejudice.

*Id.* (citations omitted). *See also, Winters,* ¶ 42, 446 P.3d at 206-07 (the district court's admission of the victim's out-of-court statements to a forensic interviewer and a police officer was proper because the statements were made in a manner expected in the early

stages of a sexual abuse investigation); *Schreibvogel v. State,* 2010 WY 45, ¶¶ 27-30, 228 P.3d 874, 884-85 (Wyo. 2010) (appellant did not establish the district court committed plain error by allowing three witnesses to recount statements made by the victim).

[¶22]   There is no indication in this case the State elicited TM's out-of-court statements as part of its trial strategy.  Like in *Tombroek* and *Winters,* TM made her statements to the witnesses in a manner that would be expected from a victim initially reporting an incident of sexual abuse, rather than as an impermissible trial preparation tactic.  She told her mother and WG what happened immediately after it occurred.[2]  Sergeant Dearcorn interviewed TM shortly after the incident as part of a typical sexual abuse investigation.  *See Jones,* ¶ 22, 439 P.3d at 760 (the victims made statements to the forensic interviewers "'shortly after the initial report in a manner that would be expected in the early stages of a typical investigation'" (quoting *Griggs,* ¶ 112, 367 P.3d at 1139)).  Consequently, the district court did not violate a clear and unequivocal rule of law in a clear and obvious way by allowing Ms. Mallak and WG to testify about what TM related to them immediately after the incident or by allowing the jury to view the videos of TM's and WG's interviews with police.

### 2.  *Muted Video of Walk-Through of WG's Bedroom*

[¶23]   The video of Mr. Hicks' May 13, 2018, interview was admitted at trial, without objection, during the State's direct examination of Officer Stuber.  The video included a walk-through of WG's bedroom with Mr. Hicks explaining his version of the events earlier that morning.  When the video was played at trial, it included the audio.

[¶24]   During deliberations, the jury asked to re-watch the video of Mr. Hicks' interview.  The district court directed the jury to describe the specific part of the video it wanted to see and the purpose of its request.  The jury stated:  "In regards to the Hunter Hicks interview State Exhibit 1, we would like to see the walk-through of the basement re-creating the incident with Officer Stuber walking in and through the bedroom of [WG] to see the lighting and layout of the bedroom."

[¶25]   The district court acknowledged the video was testimonial evidence; however, the jury had narrowed its request to viewing the lighting and layout of the bedroom.  The court decided the jury could review the relevant part of the video with the sound turned off, so "it's not really even a testimonial exhibit anymore, it's like having a photograph in the jury room."  Mr. Hicks objected because the lighting was different in the video than at the time of the incident.  He also claimed the State did not lay a foundation for using the video to

---

[2] The circumstances of TM's revelations to Ms. Mallak and WG also raise the possibility that their testimony was admissible under certain exceptions to the hearsay rule, including:  a present sense impression under W.R.E. 803(1) ("A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."); or an excited utterance under W.R.E. 803(2) ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

show the lighting in the room. The State pointed out it was daylight at the time the video was recorded, so there was light coming in through the window. The district court stated the jury "necessarily understands that the lighting is not exactly as it was at the time of the incident; for one, it was filmed during daylight hours, and I think there's some daylight going through [the window]." The court further explained, "it would be incumbent upon counsel to have pointed out [the difference in the lighting conditions] to the jury when the trial was being conducted[.]"

[¶26] We addressed what materials the jury should be allowed to view during deliberations in *Chambers v. State,* 726 P.2d 1269, 1275-77 (Wyo. 1986), *receded from on other grounds by Lancaster v. State,* 2002 WY 45, ¶ 16, 43 P.3d 80, 88 (Wyo. 2002), *overruled on other grounds by Jones,* ¶ 25, 439 P.3d at 762. When trial exhibits are non-testimonial, the district court has broad discretion in deciding whether to submit them to the jury during deliberations. *Chambers,* 726 P.2d at 1275; *Munoz v. State,* 849 P.2d 1299, 1301 (Wyo. 1993). Absent an abuse of discretion, we will not disturb the district court's decision. *Munoz,* 849 P.2d at 1301.

[¶27] Testimonial materials, on the other hand, may not be sent to the jury for unsupervised review. *Id.* "The rule was designed to prevent juries from 'unduly emphasizing [the submitted testimony] over all of the other testimony in the case.'" *Id.* (quoting *Schmunk v. State*, 714 P.2d 724, 733 (Wyo. 1986)). *See also, Taylor v. State,* 727 P.2d 274, 276 (Wyo. 1986) (applying the principles set out in *Chambers*); *Warner v. State*, 897 P.2d 472, 475 (Wyo. 1995) ("The general rule is that testimonial video or audio tape recordings should be permitted in the jury room only in rare circumstances because they may function as a 'speaking witness' whose testimony may be unduly emphasized. Even when permitted, a trial court may allow the playing of only relevant portions of the tape under controlled procedures.") (citing *Munoz,* 849 P.2d at 1301).

[¶28] Wyo. Stat. Ann. § 1-11-209 (LexisNexis 2019) permits the district court to refresh the jury's recollection of trial testimony under certain circumstances.

> After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. The court may give its recollection as to the testimony on the points in dispute, in the presence of or after notice to the parties or their counsel.

[¶29] With regard to a testimonial videotape, § 1-11-209 requires the court to ascertain exactly why the jury wants to view the videotape, decide whether the tape will give the jury key facts without unduly emphasizing a witness's testimony, and only show the

8

relevant portions under carefully controlled procedures. *Chambers,* 726 P.2d at 1276-77; *Taylor,* 727 P.2d at 276.

[¶30] The videotape of Mr. Hicks' interview, as originally shown to the jury at trial, was clearly testimonial. The district court followed the procedure outlined in *Chambers* and its progeny when it directed the jury to provide more information about the specific parts of the video it wanted to review and the purpose for which it wanted to see those parts. After reviewing the jury's clarification, the district court decided to "remove" the testimonial aspect of the video because the information the jury sought was not Mr. Hicks' testimony, but the lighting and layout of the room. Mr. Hicks claims the district court abused its discretion by allowing the jury to view the muted video for the same reasons he objected below – the video did not accurately depict the lighting conditions at the time of the abuse and the State did not lay foundation for admission of the video for the purpose of showing the amount of light in the room.

[¶31] "When evidence which is admissible as to one (1) party or for one (1) purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." W.R.E. 105. Even if a limiting instruction is warranted, the district court is not obligated to give one, if it is not requested. *Chapman v. State,* 2001 WY 25, ¶ 22, 18 P.3d 1164, 1174 (Wyo. 2001) ("'If . . . the defendant does not present an appropriate request, the trial court is not required to give the limiting instruction.'" (quoting *Rigler v. State,* 941 P.2d 734, 738 (Wyo. 1997)). Evidence admitted without a limiting instruction "'may be considered for any legal purpose for which it is admissible, although the evidence, when introduced, was intended for a particular purpose.'" *Grabill v. State,* 621 P.2d 802, 811 (Wyo. 1980) (quoting *Westland Nursing Home, Inc. v. Benson*, 517 P.2d 862, 866 (Colo. Ct. App. 1974)). *See also, Tombroek,* ¶ 13, 217 P.3d at 811 ("Because there was no request for a limiting instruction, we must assume that the jury used the evidence for whatever purpose it chose[.]"); *Connolly v. State,* 610 P.2d 1008, 1011 (Wyo. 1980) ("To charge the trial court with the duty of protecting defendant's right to receive a limiting instruction, thereby relieving the attorney of that obligation, would be an exercise in role-switching which we are not ready to condone, and which would, in any case, be contrary to the procedural responsibilities contemplated by [W.R.E.] 105[.]").

[¶32] Mr. Hicks did not object when the video of Mr. Hicks' interview with Officer Stuber was admitted into evidence, and he did not request a limiting instruction informing the jury it should not be considered for the purpose of discerning the lighting in the bedroom. Consequently, the district court admitted the entire video, including the walk-through of WG's bedroom, without restriction. Given that ruling, the jury could consider the evidence for any purpose it wanted.

[¶33] Mr. Hicks also claims that, by removing the sound, the district court impermissibly altered the video, making it into an entirely new exhibit which was not admitted into

9

evidence.  He cites no authority regarding the alteration of exhibits.  Instead, he likens his case to *Worcester v. State,* 2001 WY 82, 30 P.3d 47 (Wyo. 2001).  Mr. Worcester was charged with reckless operation of a watercraft after he was involved in a collision.  *Id.,* ¶ 4, 30 P.3d at 49.  During his trial in justice of the peace court, "the witnesses used two small personal watercraft models for demonstrative purposes in front of the jury."  *Id.,* ¶¶ 5-6, 30 P.3d at 49-50.  The exhibits were not received into evidence at trial, but the court permitted the models to go to the jury room during deliberations.  *Id.,* ¶ 6, 30 P.3d at 50.  On plain error review, we determined the court violated a clear and unequivocal rule of law by allowing items not admitted into evidence at trial into the jury room.  *Id.,* ¶ 10, 30 P.3d at 51.  However, Mr. Worcester was not materially prejudiced by the error.  *Id.,* ¶ 12, 30 P.3d at 51-52.

[¶34]  *Worcester* is not comparable to the case at bar for two reasons.  First, the district court did not allow the jury unlimited access to State's Exhibit 1; it permitted the jury to view a specific portion of the video in a carefully controlled environment.  More importantly, unlike the models in *Worcester,* State's Exhibit 1 was admitted into evidence.

[¶35]  Under § 1-11-209, *Taylor,* 727 P.2d at 276, and *Chambers,* 726 P.2d at 1276-77, the district court was required to ascertain exactly why the jury wanted to view the videotape and only show the <u>relevant portions</u> under carefully controlled procedures.  The statute and our precedent, therefore, anticipate some modification of the original form of the testimony.  We do not suggest that any alteration of evidence is permissible; however, Mr. Hicks has not demonstrated the district court abused its discretion in this case by playing the clip of State's Exhibit 1 without the sound.  *See Proffit,* ¶ 5, 191 P.3d at 966 ("The burden is on the appellant to establish an abuse of discretion.").

[¶36]  Furthermore, Mr. Hicks was not prejudiced by the district court allowing the jury to consider the lighting in the room.  An error is prejudicial if there is a reasonable probability the verdict would have been more favorable to the appellant had the error not occurred.  *Swett,* ¶ 12, 431 P.3d at 1140 (citing *Bustos v. State,* 2008 WY 37, ¶ 9, 180 P.3d 904, 907 (Wyo. 2008) and *Burton v. State,* 2002 WY 71, ¶ 12, 46 P.3d 309, 313 (Wyo. 2002)).

[¶37]  Mr. Hicks claims the difference between the lighting conditions at the time of the abuse and the walkthrough was important because the jury may have been trying to determine if TM was telling the truth when she testified she saw a reflection in the television and/or whether it was so dark Mr. Hicks could not see what part of TM's body he was touching.  Initially, we are not convinced the jury necessarily sought to review the lighting conditions in the room at the time of the incident (i.e. how light or dark it was in the room at that point in time).  The jury note referred to "lighting," which could simply be the location of the lights mentioned in testimony.  A standard definition of lighting is "the arrangement of lights" in a room or house.  https://dictionary.cambridge.org/us/dictionary/english/lighting.

10

[¶38] Mr. Hicks' claim that the lighting conditions could have been important to the jury in determining if TM was telling the truth about seeing his reflection in the television is dubious because the television was not visible in the video. Moreover, there was no dispute as to Mr. Hicks' identity. He admitted he was in the room and that he touched TM. He only disputed the nature of the touch.

[¶39] Mr. Hicks' own testimony dispels any question about whether he could see what part of TM he was touching:

> [Defense Counsel] . . . And so when you go into [WG's] room, describe how you get there.
>
> [Mr. Hicks]   I walk down the stairs, of course. Turn on the light, walk down the stairs, I turn on the light in the living room. Walk – you come down the stairs and then you take a right and you go around and then go straight back, and her bedroom is on the right-hand side.
>
> The door was open when I got down there. I walked in, I said, "Hey, girls." I didn't get any response.
>
> Q.   And then what was the lighting like in the room?
>
> A.   The bathroom light's on and the living room light behind me is on. So I mean you can see pretty clearly in the room.

Mr. Hicks has not demonstrated there is a reasonable probability the verdict would have been more favorable to him if the district court had refused the jury's request to view the video.

### 3. *Cumulative Error*

[¶40] Mr. Hicks claims that even if any single error is insufficient to warrant reversal of his conviction, the cumulative effect of the errors deprived him of a fair trial. "'The purpose of evaluating for cumulative error is to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error.'" *Buszkiewic,* ¶ 43, 424 P.3d at 1284 (quoting *Sweet v. State,* 2010 WY 87, ¶ 40, 234 P.3d 1193, 1207 (Wyo. 2010) (other citation and quotation marks omitted)). When performing a cumulative error analysis, "we consider only matters that were determined to be errors, and not any matter assigned as error but determined not to be erroneous." *Sweet,* ¶ 40, 234 P.3d at 1207. *See also, In re KMO,* 2012

WY 99, ¶ 37, 280 P.3d 1203, 1215 (Wyo. 2012).  Given the district court did not err, there is no basis for finding cumulative error.

## CONCLUSION

[¶41]   The district court did not commit plain error by admitting evidence of TM's out-of-court statements about the abuse.  It also did not abuse its discretion by allowing the jury to review during deliberations the muted video of Mr. Hicks' walkthrough of WG's room. In the absence of any error, the cumulative error doctrine does not apply.

[¶42]   Affirmed.