# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 108

OCTOBER TERM, A.D. 2024

October 16, 2024

ELIJAH DANTE DOBBINS,

Appellant
(Defendant),

v.                                                                           S-24-0080

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Joshua C. Eames, Judge*

**Representing Appellant:**
> *Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender\*; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel.*

**Representing Appellee:**
> *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.*

**Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.**

\*An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    A jury convicted Elijah Dante Dobbins of third-degree sexual abuse of a minor, strangulation of a household member, unlawful contact, and permitting a house party. Mr. Dobbins appeals the strangulation conviction, arguing that the district court abused its discretion by allowing the jury to review three of the State's video exhibits during deliberations. We affirm.

### ISSUE

[¶2]    The sole issue for our review is whether the district court abused its discretion when it allowed the jury to review three of the State's video exhibits during deliberations.

### FACTS

[¶3]    In the fall of 2022, Mr. Dobbins hosted a party at his apartment in Mills, Wyoming. Mr. Dobbins's girlfriend, Harmony Lehmbeck, attended the party along with five of her coworkers. The testimony at trial reflected varying perspectives on the events of the night.

[¶4]    Relevant to this appeal and agreed upon by all witnesses who attended the party, at some point, Mr. Dobbins and Ms. Lehmbeck got into a fight. The fight became physical, leaving the kitchen area of Mr. Dobbins's apartment in a state of disarray. Eventually, the two ended up by the apartment's front door. As the struggle continued, Ms. Lehmbeck ended up on the floor with her shirt off. Several of Ms. Lehmbeck's coworkers testified that during this struggle, Mr. Dobbins choked Ms. Lehmbeck either by holding his hands around her neck or using her shirt, and Ms. Lehmbeck appeared to lose consciousness. Ms. Lehmbeck testified that Mr. Dobbins was only trying to restrain her and remove her from the apartment and that he did not choke her. She also testified that she never lost consciousness.

[¶5]    One of the coworkers, ReiAnn Leal, captured three videos of the struggle on her phone. The first video, State's Exhibit 100, is five seconds long and shows Mr. Dobbins and Ms. Lehmbeck, both standing, shoving each other near the apartment's front door. The second video, State's Exhibit 101, is less than three seconds long and shows Mr. Dobbins kneeling over Ms. Lehmbeck, who is laying on the floor with no shirt on. The third video, State's Exhibit 102, is fifteen seconds long and shows Mr. Dobbins yelling to someone off camera and Ms. Lehmbeck laying on the floor, still shirtless. State's Exhibit 100 has no audio, State's Exhibit 101 has audio for the whole video, and State's Exhibit 102 only has audio for about half of the video.

[¶6]    The State charged Mr. Dobbins with ten counts related to the events of the party. The case proceeded to a jury trial. At trial, the videos taken by Ms. Leal were played for

the jury during Ms. Leal's testimony, and again during Ms. Lehmbeck's testimony. At the end of Ms. Leal's testimony, the district court stated that it would be collecting the videos to "keep custody" of them. The videos were listed in the index to exhibits in the trial transcript.

[¶7]    After the case was submitted to the jury, the district court held a conference to clarify "what exhibits were admitted and going back." The district court stated that its "notes" included Exhibits 100, 101, and 102. Regarding whether these exhibits would be going to the jury during deliberations, the district court said:

> Obviously, 100, 101, 102, and 200 being videos will not be going back to the jury. Certainly, if we receive a request from them to view those, my intent would be to require that they give a reason why they want to view those, bring everyone back into the courtroom and then play any appropriate portions of the videos here in open court.

Neither the State nor Mr. Dobbins objected to this plan regarding the videos or their inclusion in the district court's list of exhibits.

[¶8]    During deliberations, the jury sent a note to the district court asking, "Would we be able to watch the video of the fight[?]" The district court, with the approval of Mr. Dobbins and the State, responded to the jury by asking which videos they wanted to watch, which portions they wanted to watch, and their reason for wanting to review the videos.[1] The jury requested to view the entirety of State's Exhibits 100, 101, and 102 "[t]o clarify the alleged strangulation and battery." Mr. Dobbins objected to showing the videos again, noting that the jury had already viewed the videos on two occasions. The district court overruled the objection and stated that it would allow the jury to review each of the videos twice, explaining that "[t]hey are fairly quick videos. You blink and you miss some of it." The jurors were brought back into the courtroom, where the videos were each played twice under the court's supervision.

[¶9]    The jury convicted Mr. Dobbins of third-degree sexual abuse of a minor, strangulation of a household member, unlawful contact, and permitting a house party. It acquitted him of the remaining six counts. Mr. Dobbins timely filed a notice of appeal. On appeal, Mr. Dobbins challenges only his conviction for strangulation of a household member.

---

[1] In crafting these questions, the district court specifically referenced our decision in *Hicks v. State*, which outlines the procedure a trial court must follow when a jury requests to review a video that is testimonial. 2021 WY 2, ¶ 29, 478 P.3d 652, 661 (Wyo. 2021).

## STANDARD OF REVIEW

[¶10]  Mr. Dobbins contends that it was error for the district court to permit the jury to view State's Exhibits 100, 101, and 102 during deliberations. With regard to allowing the jury access to exhibits during deliberations, we have said:

> When trial exhibits are non-testimonial, the district court has broad discretion in deciding whether to submit them to the jury during deliberations. *Chambers*, 726 P.2d at 1275; *Munoz v. State*, 849 P.2d 1299, 1301 (Wyo. 1993). Absent an abuse of discretion, we will not disturb the district court's decision. *Munoz*, 849 P.2d at 1301.
>
> Testimonial materials, on the other hand, may not be sent to the jury for unsupervised review. *Id.* "The rule was designed to prevent juries from 'unduly emphasizing [the submitted testimony] over all of the other testimony in the case.'" *Id.* (quoting *Schmunk v. State*, 714 P.2d 724, 733 (Wyo. 1986)). *See also*, *Taylor v. State*, 727 P.2d 274, 276 (Wyo. 1986) (applying the principles set out in *Chambers*); *Warner v. State*, 897 P.2d 472, 475 (Wyo. 1995) ("The general rule is that testimonial video or audio tape recordings should be permitted in the jury room only in rare circumstances because they may function as a 'speaking witness' whose testimony may be unduly emphasized. Even when permitted, a trial court may allow the playing of only relevant portions of the tape under controlled procedures.") (citing *Munoz*, 849 P.2d at 1301).

*Hicks*, 2021 WY 2, ¶¶ 26-27, 478 P.3d at 660-61. Thus, the decision to allow a jury to review exhibits during deliberations is reviewed for an abuse of discretion, but that discretion is constrained when the exhibits are testimonial. *Id.*; *Soares v. State*, 2024 WY 39, ¶ 41, 545 P.3d 871, 881 (Wyo. 2024).

## DISCUSSION

[¶11]  Mr. Dobbins argues that the district court abused its discretion by allowing the jury to view the three videos after they had begun deliberating. He first contends that the videos, while published to the jury during trial, were never admitted into evidence. He also argues that the videos were testimonial and should have been subjected to carefully controlled procedures before allowing the jury to review them, if at all. Finally, he argues that to the extent the district court attempted the procedures required for testimonial videos, these procedures were deficient. We will address each of these arguments in turn.

***I.***      ***Mr. Dobbins did not raise the issue of whether the videos were admitted with the district court and offers no plain error analysis on appeal.***

[¶12] Mr. Dobbins first contends that the three videos at issue were not admitted into evidence and thus should not have been viewed by the jury during deliberations. He claims that "[t]he exhibits were part of Ms. Leal's testimony, not independently admitted evidence." While Mr. Dobbins objected to playing the videos for the jury after they had begun deliberations, he did so on the basis that the jury had already viewed the videos twice and that he "would object to them watching them once, you know, yet again. But that's just a general objection." This objection did not raise the issue of whether the videos had been properly admitted. In fact, when the case was submitted to the jury, the district court expressly addressed the parties to clarify "what exhibits were admitted and going back." Despite this opportunity to raise the issue of whether the videos were admitted, Mr. Dobbins agreed with the district court's list of exhibits, which included State's Exhibits 100, 101, and 102.

[¶13] Normally, when a defendant does not object to an alleged error at trial, we review for plain error. *See Lee v. State*, 2024 WY 97, ¶ 12, 555 P.3d 496, 499 (Wyo. 2024). However, where an appellant does not offer a plain error analysis, we have declined to review for plain error. *Benedict v. State*, 2024 WY 55, ¶ 17, 548 P.3d 989, 994 (Wyo. 2024) (citing *Baker v. Baker*, 2023 WY 121, ¶ 17 n.3, 539 P.3d 412, 416 n.3 (Wyo. 2023); *Rodriguez v. State*, 2019 WY 25, ¶ 38 n.7, 435 P.3d 399, 411 n.7 (Wyo. 2019)). In his brief, Mr. Dobbins makes only passing statements that the videos were not admitted. He cites no authority for this argument, does not offer a plain error analysis, and appears to rely solely on the lack of a formal statement from the district court that the videos had been admitted into evidence. "We will not conduct a plain error review." *Benedict*, 2024 WY 55, ¶ 17, 548 P.3d at 994.

***II.***      ***The videos were non-testimonial.***

[¶14] Mr. Dobbins next contends that State's Exhibits 100, 101, and 102 were testimonial, limiting the district court's discretion to allow the jury to view them during deliberations. The State responds that the videos were non-testimonial, allowing the district court broad discretion in providing them to the jury during deliberations. We agree with the State.

[¶15] Our precedent is clear as to the procedure trial courts must follow before granting a jury access to testimonial materials during deliberations. *Hicks*, 2021 WY 2, ¶ 29, 478 P.3d at 661 ("With regard to a testimonial videotape, [Wyo. Stat. Ann.] § 1-11-209 requires the court to ascertain exactly why the jury wants to view the videotape, decide whether the tape will give the jury key facts without unduly emphasizing a witness's testimony, and only show the relevant portions under carefully controlled procedures.").

To know when to follow this procedure, a trial court must be able to identify a testimonial exhibit.

> Our decisions have not expressly defined the distinction between testimonial and nontestimonial evidence for purposes of this rule, but Colorado courts have provided helpful guidance. They define a testimonial out-of-court statement as one that narrates past events, and nontestimonial evidence as that which depicts an event itself rather than providing a narration of it. *People v. Rogers*, 68 P.3d 486, 494 (Colo. App. 2002) (citing *People v. Aponte*, 867 P.2d 183, 188 (Colo. App. 1993)). This is consistent with our Court's treatment of such evidence. *See Warner*, 897 P.2d at 475 (tape recording of drug transaction properly allowed into jury deliberations as nontestimonial exhibit); *Munoz v. State*, 849 P.2d 1299, 1301 (Wyo. 1993) (same); *Pino v. State*, 849 P.2d 716, 719 (Wyo. 1993) (same); *Taylor v. State*, 727 P.2d 274, 276 (Wyo. 1986) (holding videotaped interview of victim to be testimonial); *Schmunk v. State*, 714 P.2d 724, 728, 744 (Wyo. 1986) (videotaped pre-arrest interview held to be testimonial).

*Bogard v. State*, 2019 WY 96, ¶ 89, 449 P.3d 315, 336 (Wyo. 2019) (Davis, C.J., specially concurring) (footnote omitted).

[¶16] The videos in this case do not narrate past events or otherwise perform the functions of a witness at trial. Of the two videos that have any audio, State's Exhibit 102 is the only video where any words are discernable. In that video, Mr. Dobbins can be heard shouting to someone off camera, "when she's out, she's out—don't f\*\*\*ing unlock the door." Mr. Dobbins's statement in State's Exhibit 102 lacks context, does not narrate events, and does not risk him functioning as a "speaking witness" regarding the strangulation charge. *Hicks*, 2021 WY 2, ¶ 27, 478 P.3d at 661 (quoting *Warner v. State*, 897 P.2d 472, 475 (Wyo. 1995)). The videos "depict[] an event itself rather than providing a narration of it." *Bogard*, 2019 WY 96, ¶ 89, 449 P.3d at 336 (Davis, C.J., specially concurring).

### III.     The district court did not abuse its discretion when it allowed the jury to review the videos during deliberations.

[¶17] Though the exhibits were non-testimonial, the district court opted to allow the jury to review the videos under a more controlled procedure. Mr. Dobbins finds fault in the district court's procedure, arguing that the court did not obtain an adequate reason from the jury to justify allowing them to review the videos.

[¶18]   Unless an exhibit requested by the jury is testimonial, a trial court has considerable discretion in deciding whether to submit the exhibit to the jury during deliberations. *Hicks*, 2021 WY 2, ¶ 26, 478 P.3d at 660 (citing *Chambers v. State*, 726 P.2d 1269, 1276-77 (Wyo. 1986), *receded from on other grounds by Lancaster v. State*, 2002 WY 45, ¶ 16, 43 P.3d 80, 88 (Wyo. 2002)). Because the exhibits here are non-testimonial, it is through this discretionary lens that we review the district court's decision to allow the jury to review the video.

[¶19]   The district court, upon receiving the request from the jury to review the videos, held a conference with Mr. Dobbins and the State. After discussing the matter with the parties, the district court responded to the jury by asking which videos they wanted to watch, which portions of those videos they wanted to watch, and their reason for wanting to review the videos. Though Mr. Dobbins made a "general objection" to the jury watching the videos again, the district court explained its reason for allowing the jury to review the videos so long as their answers to its questions were sufficient:

> Okay. And, for the record, the reason why I think it's appropriate to play them at all, [the State] touched on this, is for at least two of them, it is fairly quick. They are fairly quick videos. You blink and you miss some of it. I think the third one is a little bit longer. But my proposal would be we simply play whichever ones they want to watch and have a good enough reason twice.

The jury responded that they wished to review all three of the videos taken by Ms. Leal "[t]o clarify the alleged strangulation and battery." The jurors were brought back into the courtroom, where the videos were each played twice under the court's supervision.

[¶20] Because the videos were non-testimonial, the district court's additional precautions were not required. Though Mr. Dobbins disputes the sufficiency of the jury's reason for reviewing the videos, the district court was not required to obtain a reason for the jury to review these non-testimonial videos. *Hicks*, 2021 WY 2, ¶¶ 26, 29, 478 P.3d at 660-61. The district court did not abuse its discretion by being more careful than our precedent requires. "A court abuses its discretion only when it could not reasonably decide as it did." *Keller v. State*, 2024 WY 71, ¶ 18, 551 P.3d 450, 457 (Wyo. 2024) (quoting *Wanberg v. State*, 2020 WY 75, ¶ 14, 466 P.3d 269, 273 (Wyo. 2020)). The district court recognized that the short nature of the videos justified an additional viewing, and did not abuse its discretion by allowing the jury to view the non-testimonial videos under controlled circumstances.

[¶21]   Affirmed.