LaROSE, Judge.
Danny Parker appeals his convictions and sentences for possession of child pornography. See §§ 775.0847, 827.071(5), Fla. Stat. (2007). More specifically, he challenges the trial court’s denial of his motion to dismiss the information. We have jurisdiction. See Fla. R. App. P. 9.140(b)(2)(A)(i). Mr. Parker’s conduct, as we will describe, is loathsome. But it escapes the grasp of the statute on which the State proceeds. Consequently, we must reverse.
Mr. Parker taught Sunday school. Over the years, he photographed many children. They posed innocently enough, much as in the style one would expect of a school photo, a yearbook, or a family scene. The innocence turned perverse. Mr. Parker cut the children’s heads from some of his photographs and pasted them to photographs of bodies of nude or partially nude adult women. Some depicted the bodies of adult women engaged in sexual activity. None of the images are computer generated. In his motion to dismiss, Mr. Parker argued that mere possession of these photographs was not unlawful. The trial court denied the motion.
Pursuant to a negotiated plea, the State nolle prossed counts eleven through ninety of the information. Mr. Parker pleaded no contest to counts one through ten, reserving his right to appeal the denial of the dispositive motion to dismiss. The trial court sentenced Mr. Parker to sixty months in prison to be followed by ten years of sex offender probation. On appeal, we confront ten photographs that the State characterizes as child pornography.[1] We review issues involving statutory interpretation de novo. L.A.P. v. State, 62 So.3d 693, 694 (Fla. 2d DCA 2011) (citing Mendenhall v. State, 48 So.3d 740, 747 (Fla.2010)).
*453 Based on our decision in Stelmack v. State, 58 So.3d 874 (Fla. 2d DCA 2010), and pursuant to the parties’ stipulation, we reverse as to seven photographs (counts 1, 2, 3, 5, 6, 7, and 10).[2] Those photographs depict lewd exhibition of an adult female’s genitals with a child’s head superimposed on an adult female body. Those photographs require no further discussion. After thoughtful consideration of the parties’ briefs, listening to counsels’ compelling presentations at oral argument, and conducting our own research, we can discern no basis on which to affirm the convictions and sentences based on three photographs that depict sexual activity (counts 4, 8, and 9). Stelmack compels reversal.
Stelmack involved photographs depicting heads of children attached to the bodies of nude adult women. None depicted sexual activity. To prove the crime of possession of child pornography, a person must ‘“knowingly possess a photograph, ... representation, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child.’ ” 58 So.3d at 875 (emphasis omitted) (quoting § 827.071(5)). As defined in section 827.071(l)(g), “sexual conduct” includes
“actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadoma[so]chistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person’s clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.”
Stelmack, 58 So.3d at 876 (emphasis omitted) (quoting § 827.071(l)(g)); accord § 775.0847(l)(f).
We determined in Stelmack that the only applicable conduct depicted was lewd exhibition of the genitals. 58 So.3d at 876. But, we held that a conviction required exhibition by a child. Id. at 877. Because the Stelmack photographs contained only images of adult genitalia, there was no “sexual conduct by a child” and, consequently, no violation of section 827.071(5). Stelmack, 58 So.3d at 876.
To be sure, the three remaining photographs before us are markedly different from those in Stelmack. Each depicts a child’s head superimposed on a body of an adult female engaged in sexual intercourse, deviate sexual intercourse, or masturbation. The conduct falls within the scope of section 827.071(l)(g). But, whether the conduct is “actual” or, as the dissent suggests, “simulated,” the conduct is that of an adult. The crudely constructed depictions, fortunately, leave no doubt that no child engaged in the sexual conduct. Accordingly, we cannot conclude that Mr. Parker possessed child pornography. The legislature’s words constrain us.
It bears repeating that a person is guilty of possessing child pornography if he “knowingly possess[es] a photograph, ... representation, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child.” § 827.071(5) (emphasis added). No matter how one parses the words, section 827.071 requires that the depicted sexual conduct be that of a child. The three photographs fail that test. The content of the three photographs offers us no meaningful basis on which to distinguish Stelmack. With *454 out the sexual conduct of a child, the three photographs elude the statute’s reach.
We are not persuaded by the dissent’s effort to distinguish Stelmack: section 827.071(l)(g) extends to “actual” or “simulated” “sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadoma[so]ehistic abuse,” which include the conduct involved here, but excludes the word “simulated” for “lewd exhibition of the genitals,” an element of the offense of which Mr. Stelmack was convicted. We noted that distinction in Stelmack, but, in light of the record then before us, saw no need to discuss the constitutionality of a provision outlawing “simulated” sexual conduct. Id. at 876 n. 2, 877. The dissent concludes that “ ‘simulated’ sexual conduct by a child” includes composites made by attaching children’s heads to adult female bodies engaged in sexual activity. Respectfully, we must disagree.
“Simulated” is “the explicit depiction of conduct ... which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals, or buttocks.” § 827.071(l)(i). The construction of “simulated” sexual conduct is explained in United States v. Williams, 553 U.S. 285, 297, 128 S.Ct. 1880, 170 L.Ed.2d 650 (2008), where the Supreme Court construed the word “simulated” as applied to a “visual depiction” of a minor engaging in “sexually explicit conduct” under 18 U.S.C. § 2252A(a)(3)(B)(ii).[3] According to the Court, “a reasonable viewer [must] believe that the actors actually engaged in that conduct on camera” and “although the sexual intercourse may be simulated, it must involve actual children.” Williams, 553 U.S. at 297, 128 S.Ct. 1830. Williams’ analysis leads us to the same conclusion regarding Mr. Parker’s depictions; no child engaged in simulated conduct and no reasonable viewer could believe so.
To the extent that legislative history is a guide, we note that in enacting section 827.071, the legislature apparently was concerned with the exploitation of children. The 1983 legislative staff summary explains that this legislation “is directed at two types of people — those who use children in sexual performances and those who, being the parent or guardian of the child, ‘consent’ to the child’s participation in such activities.” Stelmack, 58 So.3d at 876-77 (quoting Fla. H.R. Comm, on Crim. Just., H.R. 148 (1983) Staff Analysis 2 (Apr. 14, 1983) (on file with comm.)).[4] *455 The titles given to the statute are also instructive. Chapter 827 is titled “Abuse of Children” and section 827.071 is titled, “Sexual performance by a child; penalties.” We observed in Stelmack that the legislative history “reveals that it was aimed at preventing the exploitation of children in sexual performances.” Stel-mack, 58 So.3d at 876.
This legislative history is not inconsistent with our polestar, the statutory language. No child performed a sexual act, actual or simulated. And, despite the dissent’s conclusion that the packaging of the photographs appears to indicate an intention to display them, we must emphasize that the State did not charge Mr. Parker with distribution of or intent to distribute obscene photographs. See § 847.011(l)(a), Fla. Stat. (2007).[5] Neither was he charged with violating section 827.071(4), which prohibits “possess[ion] with the intent to promote any photograph ... which, in whole or in part, includes any sexual conduct by a child.”[6] Even if the State had charged Mr. Parker under section 827.071(4), conviction still would have required sexual conduct by a child. Possession of the photographs is the only crime charged. Although not binding on us, we recognize that the New Hampshire Supreme Court in State v. Zidel, 156 N.H. 684, 940 A.2d 255 (2008), reached a similar result under a statute remarkably similar to section 827.071.
The dissent discusses federal cases involving First Amendment challenges to a broader federal child pornography statute, 18 U.S.C. § 2256(8)(C). The constitutionality of federal statutes is of little aid in interpreting the scope of section 827.071(5). Nevertheless, a brief overview of some of the federal authority demonstrates how the federal government has addressed the reach of child pornography statutes. The federal statute defines “child pornography” as “any visual depiction ... of sexually explicit conduct, where ... [the] depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.” 18 U.S.C. § 2256(8)(C); see United, States v. Bach, 400 F.3d 622 (8th Cir.2005); United States v. Hotaling, 599 F.Supp.2d 306 (N.D.N.Y.2008). Before 1996, Congress defined child pornography as images created using actual children. 599 F.Supp.2d at 309 (citing 18 U.S.C. § 2252 (1994 ed.)). The Child Pornography Prevention Action (CPPA) of 1996 added three other categories of prohibited conduct. Id. One of those was 18 U.S.C. § 2256(8)(C), which defined child pornography as “created, adapted, or modified to appear that an identifiable minor *456 [was] engaging in sexually explicit conduct.”
Bach reviewed a conviction under the CPPA for a 2001 charge of receiving child pornography as defined by § 2256(8)(C). Bach, 400 F.3d 622. There, the face of a well-known child actor was “skillfully inserted onto the body of [a] nude boy so that the resulting depiction appeared] to be a picture of [the child actor] engaging in sexually explicit conduct.” Id. at 632. In affirming the conviction, the Eighth Circuit reasoned that Bach was “not the typical morphing case in which an innocent picture of a child has been altered to appear that the child is engaging in sexually explicit conduct, for the lasciviously posed body is that of a child.” Id. There was no question but that the depicted sexual conduct was that of a child. We assume that such a photograph certainly would fall within the scope of section 827.071(5).
In 2002, the Supreme Court struck down a different provision of the 1996 CPPA, 18. U.S.C. § 2256(8)(B), defining child pornography as any “visual depiction” that “is, or appears to be, of a minor engaging in sexually explicit conduct.” Ashcroft v. Free Speech Coalition, 535 U.S. 234, 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). The Court held that it was constitutionally overbroad because it allowed prosecution for images produced without using actual children, including “realistic images of children who do not exist” created with advanced computer techniques. Id. at 240, 122 S.Ct. 1389; see Hotaling, 599 F.Supp.2d at 310. Ashcroft did not challenge § 2256(8)(C). In response to Ashcroft, Congress crafted new legislation. Hotaling, 599 F.Supp.2d at 311.
The resulting PROTECT Act of 2003[7] defines child pornography to include not only images of actual children engaged in sexually explicit conduct (18 U.S.C. § 2256(8)(A)), but also images created by computer that are “indistinguishable” from images of actual minors engaging in sexually explicit conduct (§ 2256(8)(B)) and images created or modified to appear as though an identifiable minor is engaged in sexually explicit conduct (§ 2256(8)(C)). Hotaling, 599 F.Supp.2d at 311. Congress specifically removed the defense that no actual minor was involved in the production of the depiction. 18 U.S.C. § 2256(8)(C); Hotaling, 599 F.Supp.2d at 316, 317. Apparently, Congress may have been motivated to prohibit morphed images that do not use a sexually explicit image of any child. S.Rep. No. 108-2, 2003 WL 33068, at *51 n. 2 (2003); see Hotaling, 599 F.Supp.2d at 312, 316-17.
Hotaling construed this latest evolution of the federal child pornography statutes in denying a motion to dismiss a charge of possession of child pornography. 599 F.Supp.2d 306; see 18 U.S.C. § 2252A(a)(5)(B). The defendant was charged with possessing images in which heads of six identifiable minor females had been cut from original nonpornographic images and pasted onto the bodies of unidentified nude females engaged in sexually explicit conduct. Hotaling, 599 F.Supp.2d at 307-08. Under the PROTECT Act, child pornography is defined, as in Bach under the CPPA, by § 2256(8)(C), “visual depiction[s] ... created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.” However, the new language of the Act eliminated any question of whether it criminalized images that *457 did not depict actual children engaged in sexual conduct. The court ruled:
The statute defines child pornography as morphed images of “identifiable minors” engaged in sexually explicit activity. This requirement, together with an express exclusion of a defense for those who create such images without using actual children, leave no doubt the provision intends to criminalize the mere possession of pornographic images of children even when the images are morphed and no children actually engaged in the sexually explicit conduct depicted therein.
Hotaling, 599 F.Supp.2d at 322.
As this overview demonstrates, Congress enacted child pornography legislation three times, in 1994, 1996, and 2003; each time it broadened the definition of child pornography. Section 827.071(5) requires that actual children engage in sexual conduct. As the federal experience reflects, if our legislature wants to follow Congress’s example and prohibit the possession of the types of photographs involved here, we are confident that it can, and perhaps should, craft an appropriate statute.
Although the parties urge us to consider the First Amendment ramifications of section 827.071, we confine our analysis to the statutory language. Because our construction of it concludes that it does not apply to Mr. Parker’s conduct, we have no occasion to decide whether its application to him is unconstitutional. Such an analysis is unnecessary for our decision.[8] See McKibben v. Mallory, 293 So.2d 48, 51 (Fla.1974) (“It is a fundamental principle that courts will not pass upon the constitutionality of a statute where the case before them may be disposed of upon any other ground.”).
Reversed.
LENDERMAN, JOHN C., Associate Senior Judge, Concurs.
MORRIS, J., Dissents with opinion.

. At its core, child pornography is "any image depicting a minor engaged in sexual conduct.” § 775.0847(l)(b).

. In ruling on the motion to dismiss, the trial court did not have the benefit of Stelmack; it issued subsequent to the trial court’s order.

. 18 U.S.C. § 2252A provides:
Any person who ... knowingly ... advertises, promotes, presents, distributes, or solicits through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains ... (ii) a visual depiction of an actual minor engaging in sexually explicit conduct ... shall be punished as provided in subsection (b).
18 U.S.C. § 2252A(a)(3)(B)(ii).
18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as follows:
"[Sjexually explicit conduct” means actual or simulated ... (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genital or pubic area of any person.
18 U.S.C. § 2256(2)(A)(i)-(v).

. The intent of this legislation is to facilitate the prosecution of persons who use or promote any sexual performance by a child, which is not necessarily obscene. A distinction is drawn between child abuse and pornography, with the focus on the child abuser. This legislation is directed at two types of people — those who use children in sexual per *455 formances and those who, being the parent or guardian of the child, “consent” to the child’s participation in such activities.
Fla. H.R. Comm, on Crim. Just., HB 148 (1983) Staff Analysis 2 (Apr. 14, 1983) (on file with comm.) (emphasis added).

. Chapter 847 covers obscene materials. See, e.g., § 847.011, Fla. Stat. (2007) (prohibiting (1)distribution or possession with intent to distribute obscene material including photographs and (2) possession of obscene materials without intent to distribute).

. Section 827.071 proscribes four levels of the offense of sexual performance by a child:
(2) use of a child in a sexual performance, a second-degree felony;
(3) promoting a sexual performance by a child, a second-degree felony;
(4) possession with intent to promote “any photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, includes any sexual conduct by a child,” where possession of three or more copies is prima facie evidence of such intent, a second-degree felony; and
(5) possession of an item described in (4), a third-degree felony.

. Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act. Hotaling, 599 F.Supp.2d at 307.

. At least one district court of appeal has held section 827.071(5) constitutional on its face. See State v. Beckman, 547 So.2d 210 (Fla. 5th DCA 1989).