# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 64

APRIL TERM, A.D. 2022

May 25, 2022

SAMUEL JOSEPH BARRETT,

Appellant
(Defendant),

v.

S-21-0163

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    Following a jury trial, Samuel Joseph Barrett was convicted of six counts of first degree sexual assault, two counts of sexual exploitation of a child, and one count of blackmail.  On appeal Mr. Barrett challenges the sufficiency of the evidence to support his convictions for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(i) and (iv) (LexisNexis 2021).  He also challenges the district court's admission of his prior conviction under W.R.E. 404(b).  We affirm.

## *ISSUES*

[¶2]    We restate the issues:

> I. Was there sufficient evidence at trial to support Mr. Barrett's convictions for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(i) and (iv)?

> II. Did the district court abuse its discretion by admitting evidence of Mr. Barrett's prior conviction under W.R.E. 404(b)?

## *FACTS*

[¶3]    Mr. Barrett's crimes involved three adult victims—AH, AG, and KC—and one child victim—his son.  Mr. Barrett's involvement with the adult victims spanned several years.

[¶4]    His relationship with AH dated back to approximately 2009, when he pleaded guilty to and was convicted of second degree sexual abuse of a minor for his relationship with her.  She worked as a babysitter in his home.  Mr. Barrett was required to register as a sex offender as a result of this conviction.

[¶5]    Almost a decade later, AH, now in her 20s, moved to Mills, Wyoming, and began running into Mr. Barrett at Walmart.  On at least two occasions, he apologized to AH for what happened when she was a teenager.  During a chance encounter in June 2018, he bought minutes for her phone, noted that it looked like she could use some financial help, suggested he would be willing to give her money for sexual favors, and asked her to meet him for coffee.  AH agreed to meet Mr. Barrett for coffee but never showed up.[1]

[¶6]    In April 2019, AH ran into Mr. Barrett at a gas station, where he again apologized to her for what happened when she was a teenager.  He offered to help her purchase a car

---

[1] Mr. Barrett frequently recorded his conversations, including this one.

1

as amends, reassuring her that he did not expect any sexual favors in return. AH agreed to meet him at a public location later that day so he could give her a check. But when she arrived he claimed he forgot his checkbook and asked her to follow him to his home, which she did.

[¶7] On reaching Mr. Barrett's home, AH parked in the driveway and followed Mr. Barrett into the garage. As they approached the back of the garage AH realized Mr. Barrett had a gun. He pointed the gun at AH's head and said, "You ruined my life, and now I'm going to ruin yours." He then made her perform oral sex on him. He also tried to force her to have anal sex but was interrupted by AH's dog jumping out of her car. Mr. Barrett followed AH out to the driveway so she could retrieve the dog. After she did so, Mr. Barrett's phone rang and he aggressively told her to leave, threatening her not to call the police. AH drove down the street, called a friend, and then called 911 to report the assault. Dispatch instructed AH to drive to a nearby park where she told police what happened.

[¶8] During the resulting investigation, the lead detective learned that in 2015 the Natrona County Sheriff's Office investigated an allegation that Mr. Barrett sexually assaulted another woman, AG. Police reinterviewed her.

[¶9] According to AG, she went to Mr. Barrett's home in November 2014 to babysit his infant son. Mr. Barrett asked her to change the child's diaper so she gathered the necessary supplies and kneeled down in front of the child. When she looked up, Mr. Barrett was pointing a gun at her and he told her to perform oral sex on the child. Terrified, AG leaned down, tried to hide the side of her face with her hair, and repeatedly kissed the child's stomach. Mr. Barrett then yelled, "What are you doing?" AG looked up and he was pointing a phone camera at her. After filming the video, Mr. Barrett led AG to a bedroom where he sexually assaulted her.

[¶10] Over the next six months, Mr. Barrett used the video of AG and his son to blackmail AG, threatening to release the video unless she engaged in sex with him and pretended to be his girlfriend. On one occasion in July 2015, Mr. Barrett had AG meet him in a parking lot where he sexually assaulted her in his car. Afterwards, he rented a motel room where he sexually assaulted her again. When AG returned home, she told her parents what had been happening, went to the hospital for a sexual assault examination, and then reported everything to the Natrona County Sherriff's Office. The Sheriff's Office investigated the allegation but never submitted the case to the District Attorney's Office for charges; the case went cold.

[¶11] Also during the 2019 investigation, police came across KC's name and contacted her for an interview. According to KC, she began a "friends with benefits" relationship with Mr. Barrett in 2010. Mr. Barrett sometimes paid her for sex; other times they went out to eat or engaged in sex without any money exchanged.

[¶12]  In April 2012, KC had an encounter with Mr. Barrett that did not go as expected. While visiting Mr. Barrett at his home, he surprised her from behind and put a gun to her back.  He then led her to a bedroom where he ordered her to perform oral sex on him. Afterwards, he made her rinse her mouth out with mouthwash, erased his phone number from her phone, and told her to leave and never contact him again.  Mr. Barrett threatened to kill her and her family if she told anyone what happened.  KC did not report the assault at that time.

[¶13]  Three years later, KC and Mr. Barrett resumed their relationship and then, in February 2019, she had another encounter with him that did not go as expected.  This time KC went to Mr. Barrett's home to pick up money he had agreed to give her for a trip to Las Vegas.  He asked her to have sex, but she declined.  He then told her the money was on a nearby shelf.  When she bent over to get the money, he rushed her from behind and choked her until she passed out.  When she awoke, he made her go to a bedroom where he sexually assaulted her.  After the assault, he made her shower, reapply her make-up, and record a video pretending she was fine.  Mr. Barrett threatened to kill her and her family if she told anyone what happened.  She felt reluctant to call the police because she had a pending warrant.

[¶14]  In July 2019, the State charged Mr. Barrett with seven counts of first degree sexual assault, seven counts of second degree sexual assault, two counts of sexual exploitation of a child, and one count of blackmail.[2]  He pleaded not guilty.

[¶15]  Before trial, Mr. Barrett filed a demand for notice of the State's intent to introduce W.R.E. 404(b) evidence.  The State provided notice that it intended to introduce Mr. Barrett's 2009 conviction for second degree sexual abuse of a minor to show motive, intent, a general course of conduct, and to give the jury a general understanding of the relationship between Mr. Barrett and AH.  In his written response and at a pretrial hearing, Mr. Barrett conceded his prior conviction was admissible to show course of conduct.  The court conducted the required W.R.E. 404(b) analysis and admitted the evidence to show motive and course of conduct.  We discuss the pretrial proceedings related to admission of the prior conviction and the court's decision in more detail as relevant to our 404(b) analysis.

[¶16]  The case went to trial on nine charges, including six counts of first degree sexual assault—one involving AH, two involving KC, and three involving AG.  The charges at trial also included one count of sexual exploitation of a child for creating the video, one count of sexual exploitation of a child for possessing the video, and one count of blackmailing AG.

[¶17]  The State called more than 20 witnesses.  AH, AG, and KC each testified about their relationship with Mr. Barrett.  Numerous law enforcement officers testified about the 2019

---

[2] The State amended the information several times.  Those amendments are not relevant on appeal.

3

and 2015 investigations. An expert addressed sexual assault reporting patterns and victim behavior generally. A Sexual Assault Nurse Examiner discussed AG's and AH's sexual assault examinations. The State also introduced numerous exhibits, including AH's 911 call, the video Mr. Barrett recorded of AG and his son, text messages between Mr. Barrett and the victims, and audio recordings of Mr. Barrett and various individuals including the victims.

[¶18] Mr. Barrett exercised his constitutional right not to testify. Through cross-examination, exhibits, and argument he challenged each woman's credibility, contended they made up the allegations, and offered an alternative explanation for most events.

[¶19] The jury found Mr. Barrett guilty on all nine counts. The court convicted him of those offenses and imposed a lengthy sentence. Mr. Barrett timely appealed.

## DISCUSSION

### I. There was sufficient evidence at trial to support Mr. Barrett's convictions for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(i) and (iv).

[¶20] Our sufficiency of the evidence standard of review is well established. We "examine[] the evidence in the light most favorable to the State." *Cotney v. State*, 2022 WY 17, ¶ 9, 503 P.3d 58, 63 (Wyo. 2022) (quoting *Birch v. State*, 2018 WY 73, ¶ 25, 421 P.3d 528, 536 (Wyo. 2018)). "We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it." *Id.* (quoting *Birch*, ¶ 25, 421 P.3d at 536). "We also disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Id.* (quoting *Birch*, ¶ 25, 421 P.3d at 536).

[¶21] In applying this standard, our task is not to determine whether the evidence was sufficient to establish the appellant's guilt beyond a reasonable doubt. *Mraz v. State*, 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016) (citing *Bean v. State*, 2016 WY 48, ¶ 45, 373 P.3d 372, 387 (Wyo. 2016)). It is to determine whether "the evidence could reasonably support such a finding by the [jury]." *Id.* (quoting *Bean*, ¶ 45, 373 P.3d at 387).

#### A. Child Pornography

[¶22] The statutes provide, in relevant part: "A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly: (i) Causes, induces, . . . or permits a child to . . . be used for, the making of child pornography; . . . . [or] (iv) Possesses child pornography[.]" Wyo. Stat. Ann. § 6-4-303(b)(i), (iv). Mr. Barrett was convicted under both subsections.

[¶23] He first challenges his convictions on grounds that the jury could not reasonably conclude the video he recorded of AG and his son met the definition of child pornography.

[¶24] "Child pornography" means:

> any visual depiction, including any photograph, film, video, picture, computer or computer-generated image or picture, whether or not made or produced by electronic, mechanical or other means, of explicit sexual conduct, where:
>
> (A) The production of the visual depiction involves the use of a child engaging in explicit sexual conduct;
>
> (B) The visual depiction is of explicit sexual conduct involving a child or an individual virtually indistinguishable from a child; or
>
> (C) The visual depiction has been created, adapted or modified to depict explicit sexual conduct involving a child or an individual virtually indistinguishable from a child.

Wyo. Stat. Ann. § 6-4-303(a)(ii).

[¶25] Two of the phrases used to define child pornography are also statutorily defined:

> (iii) "Explicit sexual conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, between persons of the same or opposite sex, bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person[.]
>
> (iv) "Visual depiction" means developed and undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

Wyo. Stat. Ann. § 6-4-303(a)(iii), (iv).

[¶26] The crux of Mr. Barrett's argument is that the jury could not reasonably conclude the video depicted a child engaged in "simulated sexual intercourse, including . . . oral-genital[.]" He more specifically suggests the video could not constitute child pornography because it does not depict any genitalia, erection, or arousal. Notably, however, the relevant portion of the statutory definition of "explicit sexual conduct" contains no such requirement. Wyo. Stat. Ann. § 6-4-303(a)(iii). Explicit sexual conduct may involve

5

actual or simulated sexual intercourse or lascivious exhibition of the genitals or pubic area of any person. *Id.* The State need not prove both.

[¶27] Mr. Barrett emphasizes that he was not charged in connection with the video in 2015 and that AG was not charged with a crime in 2019. These facts have no bearing whatsoever on whether the jury could reasonably conclude the video constituted child pornography.

[¶28] Next, relying on *Craft v. State*, 2012 WY 166, 291 P.3d 306 (Wyo. 2012), Mr. Barrett argues the video must have been "lascivious" to constitute child pornography, and asserts "[t]here is nothing in the video clip that approaches something that would stimulate sexual desire." Mr. Barrett's reliance on *Craft* is misplaced because it involved only the second portion of the disjunctive "explicit sexual conduct" definition. *Id.* ¶¶ 10, 14, 291 P.3d at 309, 310.

[¶29] In *Craft*, the State had to prove a photo of the child victim naked from the waist down constituted "a lascivious exhibition of [her] genitals or pubic area." *Id.* ¶ 10, 291 P.3d at 309 (citation omitted). We explained that to prove the exhibition was "lascivious" the State had to prove the photo tended or was "intended to excite lust or sexual desire." *Id.* ¶ 14, 291 P.3d at 310 (citations omitted). As noted above, here the State only had to prove the video depicted a child engaged in "simulated sexual intercourse, including . . . oral genital[.]" The word "lascivious" does not modify the phrase "simulated sexual intercourse." *See* Wyo. Stat. Ann. § 6-4-303(a)(iii). It modifies only the phrase "exhibition of the genitals or pubic areas[.]" *See id.* Had the legislature intended to apply the word "lascivious" to the phrase "simulated sexual intercourse," it would have done so.

[¶30] Finally, citing *Parker v. State*, 81 So.3d 451 (Fla. Dist. Ct. App. 2011), Mr. Barrett argues the video must show genitals or buttocks to involve simulated sexual intercourse. The Florida statute at issue in *Parker* defined "simulated" to mean "the explicit depiction of conduct . . . which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals, or buttocks." *Id.* at 454 (quoting Fla. Stat. § 827.071(1)(i)). Wyoming's child pornography statutes do not similarly define "simulated." They do not define "simulated" at all. *See* Wyo. Stat. Ann. §§ 6-4-301, 6-4-303.

[¶31] Accordingly, we apply the ordinary dictionary definition of "simulated." *Marfil v. State*, 2016 WY 12, ¶ 25, 366 P.3d 969, 975 (Wyo. 2016) (explaining that "where a term used in a criminal statute is not given a statutory definition, we presume the legislature did not mean for the term to have a specialized meaning" (citations omitted)). The dictionary definition of "simulated" is "made to look genuine[.]" Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/simulated (last visited Apr. 25, 2022). It means "imitated." *Merriam-Webster Dictionary* 461 (New Edition 2005).

[¶32]   We also look to federal statutes, which similarly define "explicit sexual conduct" to include "simulated" sexual intercourse, but do not define "simulated." *Compare* 18 U.S.C. § 2256(2)(A), *and* Wyo. Stat. Ann. § 6-4-303(a)(iii).   Construing the federal statute defining "explicit sexual conduct," the United States Supreme Court said:

> "simulated" sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred.  The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera.

*United States v. Williams*, 553 U.S. 285, 297, 128 S.Ct. 1830, 1841, 170 L.Ed.2d 650 (2008).

[¶33]   With these definitions and principles in mind, we turn to the evidence presented at Mr. Barrett's trial, where AG testified:

> I showed up and was let inside.  I walked up the stairs and got up there and was asked to change the child's diaper.  So I got the stuff necessary, di- -- diaper and wipes, to change a child. Laid the child down in the middle of the living room floor and got down on my knees to change the child.  At that point in time, the defendant was walking up the stairs.  And I turned around to look, and there was a gun pointed at me.  I asked what was going on.  And while this gun is pointed at me, I was told that I needed to suck this child's dick.  I was scared out of my mind.  I didn't know what to do.  So I leaned down, tried to hide my hair over the side of my face closest to the defendant, and kissed the child's stomach.

AG further testified that she intentionally made her actions look real to satisfy Mr. Barrett because she was scared, there was a gun pointed at her, and she thought she was going to die.

[¶34]   The jury watched the video Mr. Barrett recorded, thus allowing it to independently assess what the video depicted.  The court also admitted, without objection, a Wyoming Division of Criminal Investigation report about the video file that police found saved to several of Mr. Barrett's electronic devices.  The report included the following description of the video:

> The video opens to a black screen, you can hear a creaking floor, the video starts to pan to the left and up as Barrett starts

7

up the stairs. You see a metal chain hanging on the wall come into view (similar to a boat anchor chain). The video opens to a large room with living room type furniture in it. [AG] is kneeling over [] Barrett's youngest male child. The child is on his back with no clothes on. To the left of the child you see a [diaper] on the floor. At approximately 5 seconds into the video, you still only hear creaking floorboards as Barrett enters the room. [AG] appears to be orally copulating the baby. Barrett continues recording. At 8 seconds into the video Barrett [y]ells, "What the Fuck are you doing to my son[?]" [AG] straightens up still on her knees and yells. Barrett rushes her and [y]ells "Oh My God get the fuck awa[y]…". The video abruptly ends.

[¶35] From this evidence, the jury could reasonably conclude the video met the definition of child pornography in that it was a visual depiction involving the use of a child engaged in simulated oral-genital intercourse. Wyo. Stat. Ann. § 6-4-303(a)(ii)(A), (iii), (iv). The video did not merely suggest AG was engaging in oral-genital intercourse with the child, it explicitly portrayed that act and a reasonable viewer would believe AG actually engaged in such conduct. *See Williams*, 553 U.S. at 297, 128 S.Ct. at 1841.

### B. Knowingly

[¶36] As shown above, *supra* ¶ 22, sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b) is a general intent crime because it includes the mental element "knowingly." *See Reyes v. State*, 2022 WY 41, ¶ 25, 505 P.3d 1264, 1270 (Wyo. 2022) (citations omitted). Because "knowingly" does not have a technical meaning, its ordinary meaning applies. *Id.* (citation omitted). The ordinary meaning of "knowingly" is "'with awareness, deliberateness, or intention' as distinguished from inadvertently or involuntarily." *Id.* (citation omitted). It "means 'the defendant realized what [he] was doing and was aware of the nature of [his] conduct and did not act through ignorance, mistake, or accident.'" *Id.* (quoting *United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006)).

[¶37] Mr. Barrett summarily argues the trial evidence was insufficient for the jury to conclude he "knowingly" caused, induced, or permitted his child to be used for the making of child pornography. Similarly, he summarily argues the evidence was insufficient for the jury to conclude he "knowingly" possessed child pornography.

[¶38] The jury could reasonably conclude from the evidence that Mr. Barrett pointed a gun at AG, told her to perform oral sex on his son, and then filmed her engaging in what appeared to be oral-genital intercourse, that he "knowingly" caused, induced, or permitted a child to be used for the making of child pornography. Such evidence supported that he acted with "awareness, deliberateness, or intention," rather than inadvertently or

8

involuntarily. *See id.* Consequently, there was sufficient evidence at trial to support Mr. Barrett's conviction for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(i).

[¶39] Moreover, the jury could reasonably infer from AG's testimony about the circumstances under which Mr. Barrett filmed the video, along with evidence that he stored the video on multiple electronic devices, that he "knowingly" possessed child pornography. Such evidence supported that he possessed child pornography with "awareness, deliberateness, or intention." *See id.* Consequently, there was also sufficient evidence at trial to support Mr. Barrett's conviction for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(iv).

## II.     *The district court did not abuse its discretion by admitting evidence of Mr. Barrett's prior conviction under W.R.E. 404(b).*

[¶40]  Mr. Barrett argues the district court abused its discretion when it admitted evidence of his prior conviction under W.R.E. 404(b). The State maintains Mr. Barrett should not be allowed to raise this issue on appeal because he conceded his prior conviction was admissible. In the alternative, the State argues the court did not abuse its discretion.

### A. Mr. Barrett arguably failed to preserve this issue for appeal.

[¶41]  Ordinarily, where, as here, a defendant files a pretrial demand for notice of the State's intent to introduce 404(b) evidence, we treat the demand as an objection and review the admission of any 404(b) evidence for an abuse of discretion. *See Mayhew v. State*, 2019 WY 38, ¶ 23, 438 P.3d 617, 623 (Wyo. 2019) (citing *Swett v. State*, 2018 WY 144, ¶ 11, 431 P.3d 1135, 1140 (Wyo. 2018)). This case, however, presents a question whether Mr. Barrett withdrew his objection and is, thus, precluded from claiming the district court erroneously admitted evidence of his prior conviction. *See Blumhagen v. State*, 11 P.3d 889, 895–96 (Wyo. 2000).

[¶42]  As noted above, the State provided notice of its intent to introduce Mr. Barrett's 2009 conviction for several purposes. In his written response, Mr. Barrett agreed his prior conviction was admissible to show course of conduct. He reiterated this at a pretrial hearing and the parties reached an agreement on what details about the prior conviction would be elicited at trial.[3] He is therefore precluded from claiming on appeal that the district court erred in admitting the evidence for that particular purpose. *See id.* at 895–96.

---

[3] The record is unclear as to the extent of the agreement between the State and Mr. Barrett on the admissibility of the prior conviction. The parties did not agree as to the purpose for which the evidence could be used but agreed to limit the use of the prior conviction to evidence that Mr. Barrett was convicted of sexual abuse of a minor involving AH and that the parties would not delve into the facts of the prior conviction, including that AH was Mr. Barrett's children's babysitter. Then, at trial, both sides introduced

[¶43]  The record is less clear whether Mr. Barrett withdrew his objection to admission of his prior conviction for the purpose of showing motive.  He did not, however, request or submit a proposed limiting instruction when given the opportunity.  A limiting instruction is the appropriate way to limit the jury's consideration of evidence for a particular purpose. *Neidlinger v. State*, 2021 WY 39, ¶ 29, 482 P.3d 337, 345 (Wyo. 2021).  "Evidence admitted without a limiting instruction may be considered for any legal purpose for which it is admissible, although the evidence, when introduced, was intended for a particular purpose." *Id.* (cleaned up) (quoting *Hicks v. State*, 2021 WY 2, ¶ 31, 478 P.3d 652, 661 (Wyo. 2021)).  We could, perhaps, decline to consider Mr. Barrett's 404(b) claim for this reason alone.  But, because the parties' agreement as to admissibility was not well defined, and the district court conducted the required admissibility analysis, we believe the better course is to directly address whether the district court abused its discretion by admitting the prior conviction to show Mr. Barrett's motive to sexually assault AH.  *See generally Wease v. State*, 2007 WY 176, ¶¶ 50–53, 170 P.3d 94, 109–11 (Wyo. 2007) (finding an agreement/stipulation on admission of 404(b) evidence was not well defined and proceeding to analyze whether the district court abused its discretion in admitting the evidence pursuant to Rule 404(b)).

### B. Admission to Show Motive

[¶44]  Rule 404(b) governs the admissibility of other acts evidence, stating:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

W.R.E. 404(b).

[¶45]  Our precedent mandates a procedure for the district court to follow and factors for it to consider in deciding whether to admit evidence of other crimes, wrongs, or acts. *Mayhew*, ¶ 25, 438 P.3d at 623 (citing *Moser v. State*, 2018 WY 12, ¶¶ 21–23, 409 P.3d 1236, 1243–44 (Wyo. 2018)).  In general,

---

evidence about the facts of the prior conviction.  For example, defense counsel used cross-examination to elicit testimony that when AH was 15, she agreed to perform sexual acts with Mr. Barrett in exchange for money, which he then used in closing to argue the same thing happened in April 2019.

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.* (quoting *Moser*, ¶ 21, 409 P.3d at 1243–44).

[¶46] The district court should consider the following five factors to determine the probative value of the evidence:

> 1. How clear is it that the defendant committed the prior bad act?
>
> 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
>
> 3. Is other evidence available?
>
> 4. Is the evidence unnecessarily cumulative?
>
> 5. How much time has elapsed between the charged crime and the prior bad act?

*Id.* ¶ 26, 438 P.3d at 623 (quoting *Moser*, ¶ 22, 409 P.3d at 1244).

[¶47] The district court should then weigh the following six factors against the probative value of the evidence:

> 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
>
> 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
>
> 3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that

11

the jury will draw the improper inference that if the defendant did it once, he probably did it again.

> 4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
>
> 5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
>
> 6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Id.* ¶ 26, 438 P.3d at 623–24 (quoting *Moser*, ¶ 22, 409 P.3d at 1244).

[¶48]  We do not apply this analysis anew on appeal. *Id.* ¶ 27, 438 P.3d at 624 (citing *Garrison v. State*, 2018 WY 9, ¶ 20, 409 P.3d 1209, 1215 (Wyo. 2018)). We determine whether the district court abused its discretion in considering the factors. *Id.* (citing *Griggs v. State*, 2016 WY 16, ¶ 128, 367 P.3d 1108, 1143 (Wyo. 2016)). As long as there is a legitimate basis for the district court's decision, we will not disturb it on appeal. *Id.* ¶ 23, 438 P.3d at 623 (citing *Swett*, ¶ 11, 431 P.3d at 1140). Mr. Barrett has the burden to show an abuse of discretion. *See id.* (citing *Swett*, ¶ 11, 431 P.3d at 1140).

[¶49]  The court found Mr. Barrett's prior conviction was offered for a proper purpose—motive. "Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." *Id.* ¶ 31, 438 P.3d at 627 (quoting *Swett*, ¶ 39, 431 P.3d at 1146). "Although motive is not an element of any charged crime, it is an intermediate fact that the prosecution is permitted to prove." *Id.* (citing *Mitchell v. State*, 865 P.2d 591, 596–97 (Wyo. 1993)).

[¶50]  Considering the factors to determine the probative value of the prior conviction, the court found:

> It is clear that the defendant committed the prior offense because he pled guilty to it, admitted it, and was convicted of it.
>
> The defendant has pled not guilty to the current charges.

There's not much other evidence to prove the defendant's alleged motive for the conduct charged relative to A.H. in the instant case, and the proposed evidence also directly explains the defendant's alleged statement that A.H. had ruined his life so he was going to ruin hers.

The proposed evidence -- I believe the incident would have occurred in 2008 -- would not be unnecessarily cumulative of other evidence on this issue.

[¶51]   Weighing the prejudice factors against the probative value of the prior conviction, the court found:

The prior relevant conduct from 2008 is, at most, equally or less comparable in reprehensibility or enormity when compared to the charged conduct in this case.

A.H. is the victim of the prior conduct and the alleged victim of the charged conduct.

In some ways, the conduct at issue between the two incidents is similar in that they both involve illegal sexual acts against A.H.   In other ways, the conduct at issue between the two incidents is different in that there is an allegation of force by using a firearm of some kind in connection with the assault of A.H. for the charged conduct, where that was not the case relative to the prior conviction.

The defendant's prior conviction and conduct relevant to it are highly probative of motive in the instant case as opposed to the bad character and improper inferences under Rule 404(b).

[¶52]   "Having reviewed and considered the proposed evidence, the charged conduct [], and the requisite factors," the district court found "the probative value of the proposed evidence [was] not substantially outweighed by the danger of unfair prejudice to [Mr. Barrett][.]"   The record demonstrates the court conducted an appropriate analysis of the 404(b) evidence and establishes a legitimate basis for its ruling.   Mr. Barrett's arguments do not convince us to the contrary.

[¶53]   Mr. Barrett first suggests the court did not consider the facts of his prior conviction in weighing the prejudice factors against the probative value of the evidence.   The record reflects otherwise.   The State summarized the underlying facts in its notice and attached a copy of Mr. Barrett's change of plea hearing transcript in which he provided the factual

13

basis for his plea. Before ruling, the court summarized those facts. While the court did not expressly mention the facts in its analysis, it plainly considered them.

[¶54] Next, Mr. Barrett contends his case is similar to *Dougherty v. State* in that no evidence was produced at trial about the facts underlying his prior conviction. *Dougherty* is factually distinguishable. There the district court ruled the State could use a few of Mr. Dougherty's prior convictions for similar behavior to show motive, intent, and lack of mistake. *Dougherty v. State*, 2016 WY 62, ¶ 16, 373 P.3d 427, 432 (Wyo. 2016). But it limited the evidence the State could introduce about the convictions to the judgments and sentences, which contained no facts about the underlying circumstances of the crimes. *Id.* ¶¶ 16, 19, 373 P.3d at 432, 433. We concluded the court abused its discretion by admitting those documents because, without any facts about the underlying crimes, the documents "could not make the issues of motive, intent or lack of mistake more or less probable." *Id.* ¶ 21, 373 P.3d at 434. They "existed solely to show that Mr. Dougherty had a propensity for committing bad acts [] because he had done so before[,]" contrary to W.R.E. 404(b). *Id.*

[¶55] Unlike *Dougherty*, the facts underlying Mr. Barrett's conviction were discussed throughout trial. AH testified that Mr. Barrett was convicted of sexually assaulting her when she was a teenager, and she said the assault was not forced. The Sexual Assault Nurse Examiner who examined AH at the hospital in April 2019 testified that she asked whether AH knew her assailant. AH said she did, explaining that when AH was 15 he offered her money and drugs to sleep with him and AH told her mother. The lead detective testified that he read the arrest affidavit for Mr. Barrett's prior offense and did not recall any allegation that AH took money from Mr. Barrett for sex. He recalled that AH was 15 at the time and had been drinking vodka. These facts, along with evidence that Mr. Barrett had to register as a sex offender as a result of his conviction, helped explain why Mr. Barrett may have had motive to sexually assault AH in April 2019, particularly where he told her "You ruined my life, and now I'm going to ruin yours." Mr. Barrett's conviction did not exist solely to show he had a propensity for committing bad acts because he had done so before. *Cf. id.*

[¶56] Finally, Mr. Barrett argues the district court failed to consider that his conviction was more than 10 years old, suggesting its admission ran afoul of W.R.E. 609. Mr. Barrett's argument is flawed in that the court admitted his prior conviction pursuant to W.R.E. 404(b), not to attack his credibility pursuant to W.R.E. 609, as he did not testify. *Compare* W.R.E. 404(b) (placing limits on use of "other crimes, wrongs, or acts"), *and* W.R.E. 609(a), (b) (placing limits on use of a prior conviction to attack a witness's credibility); *see also Proffit v. State*, 2008 WY 114, ¶ 46, n.5, 193 P.3d 228, 245, n.5 (Wyo. 2008) (discussing the interplay between W.R.E. 404(b) and 609 where a defendant testifies).

[¶57]   Moreover, "[w]e have declined to set an arbitrary time line for the admissibility of Rule 404(b) evidence."  *Winters v. State*, 2019 WY 76, ¶¶ 85, 86, 446 P.3d 191, 217, 218 (Wyo. 2019) (citations omitted) (concluding the district court did not abuse its discretion in finding other acts admissible despite the passage of 20 years); *see also Griswold v. State*, 994 P.2d 920, 926 (Wyo. 1999) (declining an invitation "to set an arbitrary time limit at ten years for the admissibility of prior bad act evidence"), *abrogated on other grounds by Pena v. State*, 2013 WY 4, ¶ 29 n.2, 294 P.3d 13, 18 n.2 (Wyo. 2013); *Britton v. State*, 845 P.2d 1374, 1376 (Wyo. 1992) (concluding acts performed eight years prior were not too remote to be admissible).  The district court had discretion to decide whether the other acts evidence was too remote to have any value.  *See Winters*, ¶ 85, 446 P.3d at 218 (citations omitted).  "The question is 'one of reasonableness' considering 'the context in which the evidence was introduced and the theory supporting its admissibility.'"  *Id.* (citation omitted).

[¶58]   The district court found it "clear that [Mr. Barrett] committed the prior offense because he pled guilty to it, admitted it, and was convicted of it."  "In other words, the evidence was still reliable despite the passage of time."  *Id.* ¶ 86, 446 P.3d at 218 (citation omitted).  The court also decided, and we agree, the prior conviction was probative and relevant to Mr. Barrett's motive to sexually assault AH.  That the 2009 conviction occurred approximately 10 years prior to the April 2019 sexual assault had little bearing on its value to show motive under the circumstances of this case.

## *CONCLUSION*

[¶59]   There was sufficient evidence at trial to support Mr. Barrett's convictions for sexual exploitation of a child under Wyo. Stat. Ann. § 6-4-303(b)(i) and (iv).  The district court did not abuse its discretion by admitting evidence of Mr. Barrett's prior conviction under W.R.E. 404(b).  We therefore affirm.

15