2012 WY 166

**Douglas Howard CRAFT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–12–0030.**

Supreme Court of Wyoming.

Dec. 28, 2012.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel, Wyoming Public Defender Program. Argument by Mr. Morgan.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Before KITE, C.J., and GOLDEN,* HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury convicted Appellant Douglas Craft of sexual exploitation of a child. Craft challenges that conviction on two discrete grounds. First, he claims the State presented insufficient evidence proving the elements of the charged crime, and he faults the district court for not granting his motion for judgment of acquittal at the close of the State's case-in-chief. Craft also contends the jury's verdict is tainted by prosecutorial misconduct. Finding no reversible error, we affirm.

## ISSUES

[¶ 2] Craft phrases his issues for our consideration as follows:

I. Did the district court err when it denied Appellant's motion for judgment of acquittal, for lack of sufficient evidence?

II. Did the prosecutor commit misconduct when he argued the jury should view an exhibit as substantive proof, after he had previously asserted to the hearsay objection that the exhibit was not being offered to prove the truth of the matter asserted?

* Justice Golden retired effective September 30, 2012.

## FACTS

[¶ 3] EW, born in 1995, first met Craft at her uncle's home in January 2008 and briefly communicated with him on the internet. Approximately two years later, EW and Craft reconnected and began conversing with each other on Facebook. EW discussed problems she was having at home, and Craft attempted to give her advice. Eventually, they exchanged cell phone numbers, quit communicating on Facebook, and began contacting each other solely through text messages. Initially, the content of their text messages mirrored that of their earlier exchanges on Facebook. However, the tenor of the texts quickly changed.

[¶ 4] At EW's request, Craft sent her pictures of his tattoos. EW reciprocated by sending Craft a picture of her face. Craft then asked for better pictures and told EW that he wanted to see more skin. EW responded by sending him a picture of her upper body, clothed only in a bra. The conversations then turned to their mutual sexual attraction and whether EW would send Craft nude close-up pictures of herself. She responded by sending a picture with her bare breasts exposed. Craft told EW that she was "hot" and that he wished he could be lying in bed with her. A short time later they engaged in an imaginary sexual encounter; each telling the other through their text messages what they imagined both of them would do.

[¶ 5] Craft encouraged EW to think of him sexually, telling her he wondered what it would be like to "be with" her and sending her a picture of his genitals. They then exchanged more explicit descriptions of having sex with one another, and Craft asked for a nude picture of EW below the waist. Eventually, EW took a picture of her vagina and sent it to Craft. In the picture, EW sat on her tucked knees in front of her bedroom door. Craft complained that the picture was "very bad" and that he could not see what he wanted to see. However, EW maintained the picture showed the top—the "formation"—of her vagina.

[¶ 6] On February 8, 2010, EW's father discovered on her cell phone a text message conversation between EW and Craft. He saw that EW had sent Craft a picture of her panties, and that Craft had responded that he wanted to take them off her. The father contacted the Campbell County Sheriff's Office. That evening, Deputy Sheriff Mark Raymond spoke with EW and her father at their home and examined the text messages that were on the girl's phone. The deputy noticed that numerous texts had sexual undertones and that Craft had asked EW whether he was going to get some "really good pictures." Deputy Raymond took EW's phone and Sheriff's Investigator Daniel Maul later obtained a warrant directing EW's cellular service provider to produce all text and picture messages which had been deleted from the phone's internal memory. In response to that warrant, Alltel Communications provided Investigator Maul a verbatim record of the contents of the text messages sent to and from EW's cell phone between January 31 and February 9, 2010. Alltel, however, was unable to provide any picture messages sent or received by EW.

[¶ 7] After reviewing the information obtained from Alltel, members of the Sheriff's office interviewed Craft and EW. In their interviews, both Craft and EW gave consistent accounts of their text messaging with each other, including the fact that over a one-week period in February 2010, their texts became increasingly sexual in nature. Their messages spoke of imagined sexual encounters with one another and ultimately resulted in Craft sending EW a picture displaying his penis and asking her to send him progressively more provocative pictures. Craft stated in his interview that he had hoped to eventually see a picture of her vagina. EW complied, sending Craft a picture of herself in a bra, two pictures displaying her uncovered breasts, a picture of her panties, and a picture of her naked from the waist down in which one could see the top of her vagina.

[¶ 8] Additionally, during the interview with Craft, Investigator Maul showed Craft the Alltel record that eventually became State's Exhibit No. 3 at trial. Craft reviewed the document and identified the text

messages he had sent to EW and those that she had sent to him. Craft appeared satisfied the Alltel record set out verbatim all the messages exchanged between him and EW.

[¶ 9] On July 8, 2010, the State charged Craft with sexually exploiting a child under Wyo. Stat. Ann. § 6–4–303(a)(ii)(B) and (b)(i) (LexisNexis 2011), by causing, inducing, and enticing EW to engage in or be used for the making of child pornography. A jury trial commenced on September 6, 2011, and lasted two days. At the conclusion of the State's case-in-chief, Craft orally moved for a judgment of acquittal. The district court denied the motion. Following the denial, Craft did not present any evidence, and the case proceeded to the jury. The jury found Craft guilty on the charged crime. The district court later sentenced Craft to serve six to eight years in prison. This appeal followed.

## DISCUSSION

### Motion for Judgment of Acquittal

[¶ 10] To prove that Craft sexually exploited EW under Wyo. Stat. Ann. § 6–4–303(b)(i), the State had to establish that he caused, induced, or enticed her to engage in or be used for the making of child pornography. To prove that the picture EW took and sent to Craft was child pornography, the State had to show that it depicted explicit sexual conduct—specifically, that it depicted a lascivious exhibition of EW's genitals or pubic area. Wyo. Stat. Ann. § 6–4–303(a)(ii)(B) and (iii) (LexisNexis 2011).

[¶ 11] At the close of the State's evidence at trial, Craft's attorney moved for a judgment of acquittal, arguing that, although the State may have proved that Craft caused EW to produce a picture that showed her naked from the waist down, it had not proved that the picture lasciviously or otherwise exhibited her genitals or pubic area. Defense counsel first noted in that regard that Craft had claimed he could not see what he wanted to see in the picture: EW's genitals. Counsel then attempted to distinguish lascivious from non-lascivious depictions of a person's pubic area by noting that the latter would include pictures in a biology text, works of art, and family pictures of a bathing child.

In response, the prosecutor reminded the district court of EW's testimony that the picture showed the top part of her vagina and argued that the context provided by the nature of the text messages exchanged between EW and Craft showed that they produced and sent pictures with the aim of generating mutual sexual excitement. The district court, voicing much the same rationale as the prosecutor, denied Craft's motion.

[¶ 12] Craft contends the district court erroneously denied his motion for judgment of acquittal. In assailing the district court, Craft alludes to matters and relies on legal authorities and analysis that were not presented to the district court.[1] Our review on this issue, however, is limited to whether the district court's decision, given the evidence and arguments at the time, was correct.

[¶ 13] The salient portion of W.R.Cr.P. 29(a) states in pertinent part:

> The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or citation after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

When ruling upon a motion for judgment of acquittal, a district court is called upon to determine, as a matter of law, whether in its opinion there is sufficient evidence to sustain the charge. On review of the denial of a motion for judgment of acquittal, this Court has the same duty. *Montez v. State*, 2009 WY 17, ¶ 18, 201 P.3d 434, 440 (Wyo.2009). The principles governing a judgment of acquittal motion are well established:

> [T]he district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. It is proper to grant a motion for judgment of acquittal only if there is no substantial

> evidence to sustain the material allegations relating to the offense that is charged. Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the State.

*Taylor v. State*, 2011 WY 18, ¶ 10, 246 P.3d 596, 599 (Wyo.2011) (quoting *Martinez v. State*, 2009 WY 6, ¶ 11, 199 P.3d 526, 530 (Wyo.2009)) (internal citations omitted).

[¶ 14] At issue in this case is whether the State introduced sufficient evidence proving that EW's pictorial exhibition of her genitals or pubic area was lascivious. The term "lascivious" is not defined by statute. In the absence of a statutory definition, this Court infers that the legislature intended no special meaning for the word but, instead, intended that it be given its ordinary meaning—its common dictionary definition. *Ewing v. State*, 2007 WY 78, ¶¶ 10, 13, 157 P.3d 943, 946 (Wyo.2007). When "lascivious" is used to describe something like the "exhibition" at issue in this case, its common meaning is "tending or intended to excite lust or sexual desire." *See Black's Law Dictionary* 960 (9th ed. 2009); *American Heritage College Dictionary* 781 (4th ed. 2002); *Webster's Third New International Dictionary* 1274 (2002). In our view, the State's evidence relating to both the nature of the picture sent by EW to Craft and the circumstances surrounding the production of that picture sufficiently established that it tended and was intended to sexually excite Craft.

[¶ 15] The State introduced Craft's and EW's similar accounts of exchanging text messages, which the phone records show became increasingly sexual. After Craft sent EW pictures of his tattoos, she sent him a picture of her face. Craft asked for "better pics," wanting to see more skin, and received a picture of EW from the waist up, clothed

---

1. In particular, Craft bases his appellate argument on six factors a federal district court employed in *United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986), in determining whether, under the facts of the case before it, a photo depicting the exhibition of a child's genitals was lascivious under 18 U.S.C. § 2256. Craft never mentioned, let alone argued, the *Dost* factors in the district court as support for his motion.

only in a bra. Craft then asked EW how many guys she had been with, and they began to talk about their mutual sexual attraction and EW sending him more nude "close-up" pictures. EW then sent Craft a picture showing her bare breasts. Craft told EW that she was hot and that he wished he could be lying in bed with her. A rational jury could certainly find that, through his texts and picture messages, Craft purposely solicited sexual conversations and images from EW that would sexually arouse him. This amply meets the dictionary definition of lascivious.

[¶ 16] The State underscored that view by introducing evidence that, slightly less than a day later, Craft and EW engaged in an imaginary sexual encounter through their text messages. The following day, Craft again encouraged EW to think of him sexually by wondering in text messages what it would be like to "be with" her and by sending her a picture of his genitals. Those messages apparently further heightened their gradually mounting mutual sexual excitement, for they then exchanged more explicit descriptions of having sex with one another. EW spoke of slowly undoing Craft's jeans and masturbating him. Craft responded "u go girl mmmmmm" and told her he was imagining cupping her breasts, nibbling on her nipples, and caressing "that sweet ass of yours." Together, they spoke of EW sitting in Craft's lap, removing her panties, and lowering herself on him and having intercourse. EW then had Craft imagine her performing fellatio on him. Craft responded that he was "rock solid and achin to be inside u."

[¶ 17] Craft then also asked for a picture of EW "below the waist." EW insisted on shaving first but eventually—in the early morning hours of February 8, 2010—took and sent the requested picture of her vagina. In the picture, EW sat on her knees in front of her bedroom door wearing only a tee shirt, thereby drawing attention to the naked lower half of her body. Although EW took the picture from a tilted angle slightly above her head, the picture showed the top—the "formation"—of her vagina.

[¶ 18] We agree with the district court that sufficient evidence existed for the case to be submitted to the jury. Given the State's evidence, a jury could rationally conclude beyond a reasonable doubt that EW's picture, like the pictures and conversations that preceded it, tended to and was mutually intended to sexually excite Craft. That is, the State sufficiently proved that EW's pictorial exhibition of her genitals and pubic area was "lascivious" in the ordinary sense of the word. We therefore conclude the district court correctly denied Craft's motion for judgment of acquittal and allowed the jury to ultimately determine whether the State had proved his guilt beyond a reasonable doubt.

### Prosecutorial Misconduct

[¶ 19] At trial, Craft objected to the admission of State's Exhibit No. 3, the verbatim record of the text messages exchanged by Craft and EW, on the ground that the text messages were hearsay.[2] The prosecutor responded that he was not offering the content of the text messages to prove the truth of any statements made in those messages. Rather, he was offering the exhibit to prove that, regardless of the truth or falsity of any assertions made in the text messages, Craft and EW in fact made and exchanged back and forth statements having a sexual nature. The district court admitted the exhibit.

[¶ 20] Craft does not challenge on appeal the district court's admission of State's Exhibit No. 3. Rather, his complaint concerns the prosecutor's reference to that document in his closing argument. Specifically, Craft claims the prosecutor impermissibly told the jury in closing to use the exhibit as evidence that what he and EW said in those messages was true.

[¶ 21] Craft did not object at trial to the prosecutor's argument. As a general rule, the failure to timely object to the prosecutor's improper argument is treated as a

2. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c).

waiver unless it is so flagrant as to constitute plain error, requiring reversal. *Trujillo v. State*, 2002 WY 51, ¶ 4, 44 P.3d 22, 23–24 (Wyo.2002). Under the plain error doctrine, Craft must demonstrate by reference to the record a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way resulting in a denial of a substantial right to his material prejudice. *Proffit v. State*, 2008 WY 103, ¶ 34, 191 P.3d 974, 983–84 (Wyo.2008). To satisfy the prejudice prong, Craft must show a reasonable possibility exists that, but for the error, the jury would have returned a more favorable verdict. *Id.*, ¶ 34, 191 P.3d at 984. After a careful review of the prosecutor's closing argument, we find Craft has not satisfied his burden.

[¶ 22] Primarily, we are not convinced the prosecutor's comments were improper. In his argument, the prosecutor asked the jury to consider EW's testimony, Craft's statements to Investigator Maul, and the record of the text messages set out in State's Exhibit No. 3. With respect to the exhibit, the prosecutor asked the jury to pay special attention to the content of Craft's messages, most of which were questions or requests rather than statements of purported facts, and the responses they invoked from EW. The closest the prosecutor came to touching upon the truth of any of Craft's or EW's assertions was in his reference to Craft's texted statement that he did not want to get in trouble over their communications. Even then, however, the prosecutor did not ask the jury to use that statement as proof that Craft truly did not want to get in trouble, or that he was scared. Instead, he urged the jury to use the statement as circumstantial evidence that Craft knew that his sexualized contacts with EW were wrong. In short, the prosecutor limited the argument regarding the exhibit to the proper non-hearsay purposes for which he sought its admission—to show that Craft and EW made and exchanged back and forth statements having a sexual nature.

[¶ 23] As the State points out, the introduction of a verbal exchange that comprises the operative events of a crime does not violate the hearsay rule because, in such cases, the words have legal significance independent of what they assert. That is, the value of the exchange lies not in proving the truth of the matters asserted, but in proving the occurrence of a series of verbal events which constitute the commission of a crime. 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:18 (3d ed.2007). Similarly, when the mere fact that persons spoke of a particular matter provides circumstantial evidence of criminal behavior regardless of the truth or falsity of the statements made, the hearsay rule permits a prosecutor to convey that information to the jury. *Guerra v. State*, 897 P.2d 447, 460–62 (Wyo. 1995) (daughter's letter to defendant asked about buying marijuana on credit); *see also United States v. Monaco*, 700 F.2d 577, 582 (10th Cir.1983) (testimony of undercover officers about prostitute's descriptions of their services and prices was introduced to prove the encounters took place, not to prove the truth of what services were available at what price).

[¶ 24] In a similar vein, a prosecutor may properly use out-of-court statements to show their effect on the hearer, to explain why the hearer did what he did or why a conversation took a particular turn. The hearsay rule does not prohibit using the statements in that manner because it does not relate to proving the truth of those statements. 4 Mueller & Kirkpatrick, *supra*, § 8:20; *see also Proffit*, ¶ 21, 191 P.3d at 970. Under the same theory, a prosecutor may use such statements to prove the probable state of mind they induced in the hearer, such as the hearer's having knowledge or motive with respect to his subsequent conduct. *Id; see also Kenyon v. State*, 986 P.2d 849, 853 (Wyo.1999).

[¶ 25] These are precisely the purposes and uses that the prosecutor advanced in his closing argument. He essentially argued that State's Exhibit No. 3 was circumstantial evidence that Craft said things that caused EW to take a pornographic picture of herself: that, in effect, Craft sending text messages—regardless of their truth—was a causing, enticing, and inducing that Wyo. Stat. Ann. § 6–4–303 prohibited, and that the exhibit showed the effect of his messages on EW. The prosecutor did not ask the jury to

use the exhibit to prove that Craft and EW spoke truthfully to one another. Viewing the prosecutor's argument in proper context, we cannot say the prosecutor violated a clear rule of law. Consequently, we cannot find the existence of plain error.

## CONCLUSION

[¶ 26] We find no reversible error with respect to the issues raised in this appeal and affirm Craft's conviction.