# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 90

APRIL TERM, A.D. 2023

September 18, 2023

DAVID WAYNE MUNDA,

Appellant
(Defendant),

v.

S-23-0002

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    A jury convicted David Wayne Munda of four counts of sexual abuse of a minor in the first degree, and one count each of sexual abuse of a minor in the fourth degree, soliciting to engage in illicit sexual relations, attempt to commit sexual abuse of a minor in the second degree, and battery.  On appeal, Mr. Munda argues that the district court abused its discretion by admitting unfairly prejudicial evidence, admitting hearsay, and cumulatively depriving him of a fair trial.  Finding no abuse of discretion and no cumulative error, we affirm.

## *ISSUES*

[¶2]    Mr. Munda presents three issues, which we rephrase:

1. Did the district court abuse its discretion by admitting hearsay evidence in violation of Wyoming Rule of Evidence 802?

2. Did the district court abuse its discretion by admitting evidence in violation of Wyoming Rule of Evidence 403?

3. Did evidentiary errors cumulatively deprive Mr. Munda of a fair trial?

## *FACTS*

[¶3]    Mr. Munda's charges stem from disclosures of sexual abuse made by two victims.  The primary victim, Mr. Munda's daughter (LM), disclosed that Mr. Munda began sexually abusing her when she was five years old and that the abuse continued for twelve years, until she moved out of the family home.  Mr. Munda's stepdaughter (MD), also a victim, disclosed an incident of attempted sexual abuse by Mr. Munda that occurred when she was thirteen.

### A.    The Defense's Theory

[¶4]    At trial, during opening statements, Mr. Munda asserted that LM and MD, along with their other siblings, fabricated the allegations of sexual abuse as part of a plan to seek revenge against him for administering physical discipline.  In conjunction with this theory, Mr. Munda challenged LM's credibility.  For example, he emphasized that LM reported physical abuse, but no sexual abuse in 2014 and 2020.  He also emphasized that the medical examination of LM following her disclosure of sexual abuse revealed no evidence of sexual abuse.

1

## B.      LM's Testimony

[¶5]     LM grew up in Riverton, Wyoming, where she lived with her father, Mr. Munda, her stepmother, her brothers, and her stepsister, MD.  In February 2021, LM, who was then seventeen, moved to Utah to live with her mother.

[¶6]     LM testified that she first remembers Mr. Munda touching her in a sexual manner when she was five years old and that she lost her virginity to Mr. Munda when she was in the fourth or fifth grade.  LM provided graphic details of the abuse.  She testified that when Mr. Munda had sex with her, she would "shut down," "freeze, look up at the ceiling, and wait for it to be over."  She testified that most of the time the abuse happened in her bedroom, which she shared with MD, who was often away at her biological father's house.

[¶7]     LM specifically described several incidents of abuse.  When she was in fourth or fifth grade, she and her older brother were traveling with Mr. Munda to Montana for a tae kwon do tournament.  They stayed overnight in Greybull, Wyoming.  The next morning, when her brother was in the shower, Mr. Munda had sexual intercourse with her.  LM testified that going forward Mr. Munda would have intercourse with her "one or two times a month, maybe even more." LM also described that when she was in seventh grade, Mr. Munda picked her up from school because she had an accident with her period.  After running errands, they went to the massage studio where Mr. Munda worked.  LM testified that he gave her a massage and then told her that "sex helps with cramps" and the massage "turned into sex."  LM testified that when that she was in the eighth or ninth grade, she was on a trip with Mr. Munda.  She described a stop at the rest area in South Pass, Wyoming.  LM testified that she and Mr. Munda went inside a family restroom and the "next thing [she knew] . . . his penis was in [her] vagina while [they] were standing."  LM also recounted a time when Mr. Munda anally penetrated her while they were in the basement of the Munda home.  Finally, LM described an incident when Mr. Munda forced her to perform fellatio.[1]

[¶8]     On cross-examination, LM admitted that during her childhood she did not disclose any sexual abuse and that she did not write about it in her journal.  She admitted she provided some inconsistent details about dates and locations of the alleged abuse.  She also admitted she spoke with police about reported physical abuse in 2014 and in 2020, but that she did not report any sexual abuse until August 2021.

## C.      MD's Testimony

[¶9]     MD testified that when she was thirteen years old, she and Mr. Munda were snuggling in his bed and he "pulled [her] on top of him" so that she was straddling him.

---

[1] These allegations were charged as Counts I, II, III, IV (sexual abuse of a minor in the first degree), and Count V (sexual abuse of a minor in the fourth degree).

2

She explained that she was "positioned over his genitals," she could feel his erection, and he told her, "I can make you feel good."[2] She responded by leaving the room. MD testified that she never told anyone about the incident because she "was ashamed and embarrassed," but that she finally disclosed the incident after LM divulged her experiences.

### D. Detective Donahue's Testimony

[¶10] James Donahue, a detective with the Riverton Police Department, testified the police department had received a report from the Wyoming Department of Family Services (DFS) after DFS received a report from the Utah Department of Family Services. The Utah Department of Family Services had been given a report from an attorney for the Mundas' church. Detective Donahue then described his investigation, some of LM's forensic interview, and his interviews with LM and Mr. Munda.

### E. Ms. Larson's Testimony

[¶11] Nancy Larson testified that she was neighbors with the Munda family and that they were members of the same church. She testified that she knew LM and MD casually through church and became more familiar with them after they became her seminary students, beginning in 2018. Ms. Larson testified that she kept in touch with LM after LM left Riverton. She recalled a telephone conversation they had in August 2021. During that conversation, LM told her "something terrible had happened," "nobody could ever know," and "her father had been repeatedly sexually abusing her." Ms. Larson testified that she reported LM's disclosure to church officials, and LM was initially "unhappy" that she had reported the matter because there was going to be an investigation.

### F. Ms. Lewis' Testimony

[¶12] Nurse practitioner Linda Lewis testified regarding her training and experience in performing medical evaluations of children who have alleged sexual abuse. She described the nature of those medical evaluations and her process for conducting them. She testified that she evaluated LM and that "[h]er genital examination was normal." She explained a "normal" finding "does not rule out the possibility of sexual abuse because the tissue may heal or not be injured [in] many cases of inappropriate sexual contact."

### G. Other Witnesses

[¶13] Other witnesses, including LM's brother, CM, personnel from the sheriff's office, and two psychology experts, testified. Their testimony is largely irrelevant to the issues presented here and will be discussed only as necessary, below.

---

[2] These allegations were charged as Counts VI (soliciting to engage in illicit sexual relations) and VII (attempt to commit sexual abuse of a minor in the second degree).

**H.     Jury Verdict and Appeal**

[¶14]   After the evidence was submitted, a jury found Mr. Munda guilty of all counts.  The district court sentenced Mr. Munda to forty-five to fifty years of incarceration on each of Counts I through IV and four to five years on Count V, all to run concurrently.  It sentenced him to four to five years on Count VI and eleven to fifteen years on Count VII, to run concurrently with each other and consecutively to Counts I through V.  Finally, on Count VIII, it sentenced him to 180 days, to be served consecutively and prior to the sentences on the other counts.

[¶15]   Mr. Munda appeals, contending that the district court violated Wyoming Rules of Evidence 403 and 802 which deprived him of a fair trial.

*DISCUSSION*

**I.     *The district court did not abuse its discretion by admitting hearsay evidence in violation of Wyoming Rule of Evidence 802.***

[¶16]   Mr. Munda contends that MD's testimony regarding a statement made to her by LM was improperly admitted hearsay.  Mr. Munda lodged a hearsay objection to MD's testimony about her conversation with LM which the district court overruled without providing a reason.  Mr. Munda bears the burden of showing that the district court abused its discretion by improperly admitting the challenged testimony and that the testimony materially prejudiced him.  *Griggs v. State*, 2016 WY 16, ¶ 123, 367 P.3d 1108, 1142 (Wyo. 2016); *Tombroek v. State*, 2009 WY 126, ¶ 5, 217 P.3d 806, 808–09 (Wyo. 2009).

[¶17]   Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c).  As a general rule, hearsay statements are "inadmissible because they are made outside of court and, therefore, presumed to be unreliable." *Blair v. State*, 2022 WY 121, ¶ 18, 517 P.3d 597, 601 (Wyo. 2022) (quoting *Bruce v. State*, 2015 WY 46, ¶ 40, 346 P.3d 909, 923 (Wyo. 2015)); W.R.E. 802.  However, there are exceptions under which hearsay evidence is admitted.  *See* W.R.E. 803, 804.  A district court does not abuse its discretion if an out-of-court statement was properly admitted under an exception to the hearsay rule.  *Oldman v. State*, 998 P.2d 957, 963 (Wyo. 2000).

[¶18]   Mr. Munda challenges MD's testimony that LM had told her of "some incidents of assault.  She didn't delve too far into it . . . ."  MD made this statement to explain the timing and reasons for her disclosure of Mr. Munda's sexual solicitation.  MD testified that initially she did not tell anyone of her experience with Mr. Munda because she was embarrassed and afraid no one would believe her.  MD explained that she had been "trying not to think about it.  Every time [she] did, it brought up feelings of shame" and she

4

admitted that she probably wouldn't have thought about it again but for her discussion with LM.

[¶19] With this context in mind, we find that the district court could reasonably conclude that MD's testimony was not hearsay. Testimony repeating an out-of-court disclosure is not hearsay when offered to show the effect the statement had on the witness and to show "why a conversation took a particular turn." *Craft v. State*, 2012 WY 166, ¶ 24, 291 P.3d 306, 312 (Wyo. 2012). *See Proffit v. State*, 2008 WY 103, ¶ 15, 191 P.3d 974, 978 (Wyo. 2008) (*Proffit II*) (statements "offered for the purpose of showing the effect the statements had" on the witness were not hearsay (quoting *Proffit v. State*, 2008 WY 102, ¶ 21, 191 P.3d 963, 970 (Wyo. 2008) (*Proffit I*))). The district court did not abuse its discretion when it admitted the statement into evidence.

## II. *The district court did not abuse its discretion by admitting evidence in violation of Wyoming Rule of Evidence 403.*

[¶20] As we previously explained, LM testified that Mr. Munda sexually abused her. Additional witnesses, including Detective Donahue, Ms. Larson, and Ms. Lewis also testified to the sexual abuse of LM. *Supra* ¶¶ 10–12. Mr. Munda argues that those witnesses' corroborating testimony violated W.R.E. 403.

### A. Standard of Review

[¶21] Rule 403 states, "[R]elevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." W.R.E. 403. Rulings on the admissibility of evidence are within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Tombroek*, ¶ 5, 217 P.3d at 808–09. A trial court's admission of evidence over a W.R.E. 403 challenge will not be overturned if "'a legitimate basis exists supporting the determination.' Further, the appellant 'must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury.'" *Proffit I*, ¶ 16, 191 P.3d at 969 (quoting *Law v. State*, 2004 WY 111, ¶ 15, 98 P.3d 181, 187 (Wyo. 2004)). Finally, even if the evidence was improperly admitted, the appellant bears the burden of establishing the error caused material prejudice. *Griggs*, ¶ 123, 367 P.3d at 1142. To show material prejudice, the appellant must show a "reasonable probability" of a more favorable verdict absent the error. *Id.*

### B. Detective Donahue's Testimony

[¶22] Mr. Munda argues that Detective Donahue's testimony regarding LM's report of sexual abuse was inadmissible because its prejudicial effect outweighed its probative value.

## 1. Background

[¶23]   At trial, Mr. Munda objected to the introduction of the recording of LM's forensic interview and her statements to Detective Donahue.  Mr. Munda argued that the recorded interview was inadmissible hearsay and would improperly fill in gaps in LM's testimony.  The district court agreed and excluded the recorded interview.  The court did, however, conclude that some of LM's statements in the interview would be admissible as prior consistent statements to rebut the defense's express or implied charge of fabrication under W.R.E. 801(d)(1).[3]  It gave the State the option of editing the recording to play only those segments containing prior consistent statements or going "forward with strategic and surgical questioning" of Detective Donahue to address specific instances of prior consistent statements.  The State chose the latter.

[¶24]   Detective Donahue testified that at the forensic interview LM said:
- Mr. Munda "vaginal[ly] penetrat[ed LM] with his penis."
- Mr. Munda "subjected [LM] to fellatio," and when LM described the incident, "she became physically ill and acted as if she was ready to throw up.  She had to pause and regain her composure before she was able to describe what took place."
- LM "described anal rape" by Mr. Munda.
- LM stated that these events occurred "when she was in middle school."
- LM did not report sooner because "she had a certain amount of fear of" Mr. Munda and she thought "she'd go down for reporting."
- Mr. Munda "performed sexual acts with her in her bedroom, in his bedroom, and also at his massage studio" and that the acts "happened frequently and throughout a fairly lengthy time period."
- LM's "first memory of being, in her words, penetrated by her father was at a hotel room on a trip when she was in 5th grade" in Greybull, Wyoming, on their way to a martial arts competition in Montana, while her brother was in the shower.

---

[3] Wyoming Rule of Evidence 801(d) provides:

> A statement is not hearsay if:
>> (1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and, if offered in a criminal proceeding, was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) **consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication** or improper influence or motive, or (C) one of identification of a person made after perceiving him . . . .

W.R.E. 801(d)(1) (emphasis added).

[¶25] Detective Donahue testified about one other statement LM made to him in a later interview, also over Mr. Munda's hearsay objection:

- LM disclosed that while on a trip with Mr. Munda they stopped at a rest area, entered the family restroom there, and had sex.

[¶26] Immediately following Detective Donahue's testimony, the district court instructed the jury:

> [Y]ou have just heard . . . testimony from Detective Jim Donahue that [LM] made statements that were the same or similar to what she said here today in the courtroom.
>
> You may only consider this testimony of Detective Jim Donahue discussing the statements of [LM] for the purpose of rehabilitation, and you must rely on the in-court testimony of [LM] herself in determining the facts of this case.
>
> . . . [Y]ou and you alone are the judges of the facts. You are the sole determiners of the credibility of a witness. A witness who testified here in court, you are the sole arbiter of the credibility of that witness . . . .[4]

## 2. Analysis

[¶27] On appeal, Mr. Munda does not challenge the district court's application of W.R.E. 801(d)(1), rather he contends that the district court should have excluded the evidence under W.R.E. 403 because the probative value of LM's statements repeated by Detective Donahue was substantially outweighed by their prejudicial effects. He argues that Detective Donahue's recitation of statements made by LM was highly prejudicial because the statements were "graphic" and included "incredibly inflammatory language such as 'fellatio and anal rape.'" He also argues their probative value—rehabilitation of LM after Mr. Munda's assertions that LM had fabricated her allegations—was substantially outweighed by the graphic testimony.

---

[4] The district court gave the same limiting instruction after CM (LM's brother) testified. At the close of evidence it gave another similar instruction, stating:

> the testimony of [Detective Donahue and CM] regarding statements made to them by [LM] may not be considered as direct proof of the matters asserted in those statements. Rather, those statements may be considered by you solely for the limited purpose of evaluating the credibility of [LM], if you believed her credibility was called into question.

7

Prior consistent statements are governed by the general principles of relevancy found in W.R.E. 401, 402, and 403, and are not admissible without limitation. Further, repetitious testimony of prior consistent statements offered for rehabilitative purposes is not always admissible:

> If the corrupting influence did in fact precede the statements, probative value is greatly diminished.
>
> > " * * * Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the reason that repetition does not imply veracity.'"
>
> *Stephens v. State*, 774 P.2d 60, 72 (Wyo. 1989) (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 801(d)(1)(B)[01] at 803–150 to –151 (1987)).

*Seward v. State*, 2003 WY 116, ¶ 15, 76 P.3d 805, 811 (Wyo. 2003).

[¶28] Even when statements are relevant for the limited purpose of rehabilitating a witness' credibility, the improper use of such statements can undermine their relevance. *Griggs*, ¶¶ 111–113, 367 P.3d at 1139–40. We have expressed concern with "the State using W.R.E. 801(d)(1)(B) as a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements." *Griggs*, ¶ 111, 367 P.3d at 1139 (quoting *Tombroek*, ¶ 14, 217 P.3d at 812).

[¶29] LM made the statements described by Detective Donahue at her forensic interview and during a follow-up interview which occurred only a few days later.[5] LM's statements were made in a way that would be expected in the early stages of a sexual assault investigation and do not indicate they were made for the purpose of bolstering her trial testimony. *See Tombroek*, ¶ 14, 217 P.3d at 812 (children made statements shortly after the initial report in a manner that would be expected in the early stages of an investigation). Mr. Munda has not demonstrated that the interviews were procured to shore up LM's statements. *See Griggs*, ¶ 112, 367 P.3d at 1139. Mr. Munda challenged LM's testimony. He argued that her allegations were fabricated, used to get revenge, and contained

---

[5] LM first disclosed Mr. Munda's abuse to Ms. Larson in August 2021. The forensic interview occurred on September 13, 2021, in West Jordan, Utah, and the follow-up interview was on September 15, 2021. Trial was held May 16, 2022, eight months after the follow-up interview.

inconsistencies. The district court allowed Detective Donahue's testimony as prior consistent statements for rehabilitative purposes.

[¶30] Mr. Munda also contends that Detective Donahue's use of words "anal rape" and "fellatio" were inflammatory. Mr. Munda argues that a jury "would interpret the term 'rape' to include a forced and unlawful sexual activity" making Detective Donahue's use of the term unfairly prejudicial. "For us to conclude that a trial court abused its discretion in weighing evidence under W.R.E. 403, 'the appellant must show that the testimony has little or no value and that it was extremely inflammatory or introduced solely for the purpose of inflaming the jury.'" *Hill v. State*, 2016 WY 27, ¶ 37, 371 P.3d 553, 564 (Wyo. 2016) (quoting *Wimbley v. State*, 2009 WY 72, ¶ 20, 208 P.3d 608, 613 (Wyo. 2009) (quoting *Jennings v. State*, 806 P.2d 1299, 1305 (Wyo. 1991))). Detective Donahue put no undue emphasis on the terms he used to describe LM's portrayal of events and his recitation of LM's allegations was not inaccurate. *See Vasquez v. State*, 623 P.2d 1205, 1207 (Wyo. 1981) (finding no error, this court recognized that the Wyoming statutes no longer use the term "rape" in defining sexual assault, but "view[ed the prosecutor's use of the term] as only a reference to [the defendant's] conduct in taking his wife by force"). The State introduced LM's prior consistent statements through Detective Donahue and not through the arguably more disturbing excerpts of LM's recorded forensic interview. Detective Donahue's use of clinical language could be considered less inflammatory than LM's recorded detailed descriptions. *See Griggs*, ¶ 112, 367 P.3d at 1140. The State did not argue the details of LM's disclosure to Detective Donahue during closing—it merely used the testimony to make the point that LM's disclosure to law enforcement "was a process."

[¶31] Finally, the district court provided limiting instructions, which advised the jury to consider Detective Donahue's testimony solely for the purpose of rehabilitating LM's testimony, not for the truth of the statements. *Supra* ¶ 26. "A limiting instruction is . . . effective . . . to ensure the jury only considers the evidence for the appropriate reason and not for the truth of the matter asserted." *Griggs*, ¶ 91, 367 P.3d at 1135 (citing 30B Charles A. Wright et al., *Federal Practice and Procedure: Evidence* § 7005 (2014)).

[¶32] The district court did not abuse its discretion when it permitted Detective Donahue to testify about LM's disclosures.

## C. Nancy Larson

[¶33] As with Detective Donahue's testimony, Mr. Munda argues that Ms. Larson's testimony recounting LM's disclosure of sexual abuse violated W.R.E. 403.

### 1. Background

[¶34] Prior to Ms. Larson's testimony, Mr. Munda objected on hearsay grounds to the introduction of LM's out-of-court statements to Ms. Larson alleging sexual abuse. The

district court found the disclosure of abuse was not offered for its truth, and allowed the State to "inquire with more specificity regarding the conversation." Ms. Larson testified that LM told her "[she] never could know why [LM] moved to Salt Lake, and something terrible had happened and nobody could ever know," "it had been going on for twelve years," and that "her father had been repeatedly sexually abusing her."

## 2. Analysis

[¶35] Mr. Munda challenges this testimony under Rule 403, arguing "its probative value is substantially outweighed by the danger of unfair prejudice." To establish abuse of discretion, Mr. Munda must "demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Supra* ¶ 21. Ms. Larson's description of LM's disclosure explained the reason for the investigation into LM's allegations and how law enforcement became involved. Considering Mr. Munda's assertion that LM fabricated her allegations as revenge against him, Ms. Larson's testimony was also relevant to LM's credibility. In closing, the State used it to address LM's credibility when it asked the jury to consider if LM had a plan to get Mr. Munda in trouble, "why didn't she go directly to the police?" instead of telling only those people who were close to her.

[¶36] Mr. Munda argues, without elaboration, that Ms. Larson's testimony about LM's statement that Mr. Munda "'had been repeatedly sexually abusing her' crossed the line" and "only served to inflame and prejudice the jury against him." Ms. Larson's testimony did not emphasize LM's statements or provide graphic detail. She provided a brief description of LM's disclosure of twelve years of sexual abuse. Ms. Larson described her subsequent report of these allegations to her superiors, and that her report upset LM. The district court did not abuse its discretion in admitting Ms. Larson's testimony.

## D. Linda Lewis

[¶37] Mr. Munda argues that Ms. Lewis' testimony recounting LM's disclosure during her medical examination violated W.R.E. 403.

### 1. Background

[¶38] Mr. Munda made a hearsay objection to Ms. Lewis' testimony that during her September 28, 2021 examination, LM reported that "she had been raped" by Mr. Munda "and that the type of abuse was oral, vaginal, and rectal with his penis." The district court ruled that the testimony was admissible under the medical diagnosis exception from hearsay. *See* W.R.E. 803(4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are exceptions to the rule that hearsay is

10

inadmissible.); *Morones v. State*, 2020 WY 85, ¶¶ 9–14, 466 P.3d 300, 304–05 (Wyo. 2020) (victim's narrative of events to SANE nurse were admissible; nurse focused her assessment on areas identified).

## 2. Analysis

[¶39] Mr. Munda does not take issue with the district court's determination that the testimony was admissible under the medical diagnosis exception from hearsay. He argues instead that the testimony should have been excluded under Rule 403. As with his previous Rule 403 objections, Mr. Munda must show "that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Supra* ¶ 21.

[¶40] In his opening, Mr. Munda emphasized that there was "[n]o medical proof of sexual assault" and that LM "has been examined since these allegations and . . . her hymen is intact." Mr. Munda's witness, Dr. Jeremy Newman, testified that LM's physical examination was "normal," that sexual assault victims do not always present as "normal," and no other signs of sexual abuse were present in LM's evaluation. Ms. Lewis testified that she tailors her examinations depending on the child's disclosures. LM's disclosure informed Ms. Lewis' examination. LM's statement provided relevant background and explained the context for the examination, the nature of the examination, and its results. *See, e.g.*, *People v. Gross*, 47 N.E.3d 738, 743–44 (N.Y. 2016) (Doctor's testimony explaining why the child was examined and why the normal results of the physical examination did not indicate whether the child had or had not been sexually abused provided admissible background information.). Given Mr. Munda's reliance on LM's normal exam, Ms. Lewis' testimony—about LM's stated reason for the exam and Ms. Lewis' practice in conducting exams—was probative.

[¶41] Mr. Munda also argues that Ms. Lewis' testimony was "extremely inflammatory" because she used the term "rape." For the same reasons outlined in our analysis of Detective Donahue's testimony, Mr. Munda's conclusory argument that use of the term "rape" was inflammatory does not establish that the admission of Ms. Lewis' testimony was an abuse of discretion. *Supra* ¶ 31. Ms. Lewis did not emphasize the word, "rape," and did not add any details to LM's testimony. Ms. Lewis used the term to describe unwanted sexual intrusion. *See Vasquez*, 623 P.2d at 1207; *see also Morones*, ¶ 13, 466 P.3d at 304 (the term "strangulation" appearing in nurse's report referred to "common understanding of the event described by the victim" and not as defined by Wyoming statutes).

[¶42] Mr. Munda has not established Ms. Lewis' testimony had little or no probative value, was extremely inflammatory, or was introduced for the purpose of inflaming the jury. The district court did not abuse its discretion when it admitted Detective Donahue's, Ms. Larson's, and Ms. Lewis' testimony describing LM's statements.

### III. *Cumulative errors did not deprive Mr. Munda of a fair trial.*

[¶43] Mr. Munda argues that evidentiary errors he raises here cumulatively resulted in prejudice and denied him a fair trial. Cumulative error occurs when two or more nonreversible errors prejudice a defendant to the same extent as a single, reversible error. *Jackson v. State*, 2021 WY 92, ¶ 22, 492 P.3d 911, 919–20 (Wyo. 2021). In determining whether cumulative error has occurred, "we consider only matters that we have determined to be errors." *Id.* (quoting *Bogard v. State*, 2019 WY 96, ¶ 69, 449 P.3d 315, 332 (Wyo. 2019)). Here, we found that the district court did not abuse its discretion in admitting the testimony objected to by Mr. Munda. Because there was no error, there is no basis for Mr. Munda's claim of cumulative error. *See Hicks v. State*, 2021 WY 2, ¶ 40, 478 P.3d 652, 663 (Wyo. 2021) ("Given the district court did not err, there is no basis for finding cumulative error.").

### *CONCLUSION*

[¶44] The district court did not abuse its discretion when it admitted LM's statements to MD or when it admitted testimony of Detective Donahue, Ms. Larson, and Ms. Lewis. Because there was no error, there was no cumulative error. We affirm.

12